885 P.2d 1113

**Herzel NAHOM, a widower, Plaintiff–Appellant,**

v.

**BLUE CROSS AND BLUE SHIELD OF ARIZONA, INC., an Arizona corporation, Defendant–Appellee.**

**Herzel NAHOM, a widower, Plaintiff–Appellee,**

v.

**SCOTTSDALE MEMORIAL HOSPITAL, an Arizona corporation, Defendant–Appellant.**

**Nos. 1 CA–CV 92–0495, 1 CA–CV 93–0018.**

Court of Appeals of Arizona, Division 1, Department D.

Nov. 22, 1994.

Arnett & Arnett by Wayne C. Arnett and Mark W. Arnett, Tempe, for Herzel Nahom.

Jones, Skelton & Hochuli by Donald L. Myles, Jr. and Daniel P. Struck, Phoenix, for Blue Cross and Blue Shield.

Mitten, Goodwin & Raup by Roger C. Mitten, Donald F. Froeb and Richard M. Davis, Phoenix, for Scottsdale Memorial Hosp.

## OPINION

GERBER, Judge.

In these consolidated appeals, we must determine whether a hospital which has contracted with a patient's insurer to accept a fixed amount is entitled to additional payments from the patient's other insurance. We concur in the trial court's determination that Appellant Herzel Nahom ("Nahom") was a third-party beneficiary of the contract between Scottsdale Memorial Hospital ("Scottsdale Memorial") and Blue Cross and Blue Shield of Arizona, Inc. ("Blue Cross"). This contract limited Scottsdale Memorial's payment to a fixed amount. We affirm the trial court's grant of summary judgment against Scottsdale Memorial on Nahom's breach of contract claim. In addition, we affirm the trial court's grant of summary judgment against Nahom on his claims against Blue Cross.

### FACTS AND PROCEDURAL HISTORY

When reviewing the trial court's summary judgment, this court views the evidence favorably toward the party against whom summary judgment was granted and determines "*de novo* whether there are any genuine issues of material fact and whether the trial court erred in its application of the law." *Gonzalez v. Satrustegui,* 178 Ariz. 92, 97, 870 P.2d 1188, 1193 (App.1993).

Nahom's wife was admitted to Scottsdale Memorial in December 1989. She was covered by two insurance policies: (1) An Oakmark group policy obtained through her em-

ployer and (2) an individual policy from Blue Cross. Both policies were primary. Neither contained a coordination of benefits clause. Such a clause would prevent the total payout to a subscriber such as Nahom from exceeding the total medical bill.

Mrs. Nahom died from her illness on February 5, 1990. Scottsdale Memorial's billed charges for her stay were $112,672.36. It submitted claims for these charges to both insurers. Oakmark paid $110,989.69, based on these billed charges. Blue Cross paid $22,857.10, a fixed amount based on diagnosis, called a "FARE"[1] or "DRG"[2] amount. The DRG or FARE amounts are determined in the participation agreement between Blue Cross and Scottsdale Memorial. These fixed amounts put a cap on Blue Cross amounts paid to hospital providers for certain illnesses.

Scottsdale Memorial refunded to Mrs. Nahom's estate the excess of the billed charges from both policies, $21,174.43. Nahom claims that Scottsdale Memorial was required by its contract with Blue Cross to accept the DRG amount rather than the billed amount as payment in full, and that Nahom was entitled to monies in excess of the DRG amount. When Scottsdale Memorial refused to refund any more money, Nahom sued. He later amended his complaint to add new claims and to add Blue Cross as a defendant.

After the parties filed motions and cross-motions for summary judgment, the trial court ruled in favor of Nahom on his contract claim against Scottsdale Memorial and in favor of the defendants on all other claims. The court awarded attorneys' fees in favor of Nahom and against Scottsdale Memorial on the contract claim, and awarded attorneys' fees in favor of Blue Cross and against Nahom on his claims against Blue Cross. Nahom appeals from the judgment and award of fees in favor of Blue Cross. Scottsdale Memorial separately appeals from the judgment in favor of Nahom, the fee award, and the denial of its motion for new trial. Nahom did not cross-appeal from the judgment in favor of Scottsdale Memorial on the remaining claims.

## DISCUSSION

### Nahom v. Scottsdale Memorial Hospital (1 CA–CV 93–0018)

*1. Participation Agreement: Contract Terms and Parties' Intent*

■ The contractual agreement between Scottsdale Memorial and Blue Cross, known as the participation agreement governs the rights and duties of each party and defines terms such as "subscriber," and "covered services." Nahom asserts Scottsdale Memorial is required by the participation agreement to accept the FARE or DRG amount as payment in full for the hospitalization of a Blue Cross subscriber. He further claims that as a third-party beneficiary of the participation agreement, he is entitled to all available insurance benefits in excess of the DRG amount.

Scottsdale Memorial agrees that its recovery from Blue Cross is limited to the DRG amount and that it may not seek additional reimbursement directly from Nahom. It argues, however, that the agreement allows it to seek additional reimbursement from other insurers. In the alternative, it argues that Nahom is not a third-party beneficiary to the contract, or if he is a third-party beneficiary, he is bound by the statements of Blue Cross employees that Scottsdale Memorial may seek additional reimbursement from other insurance.

■ Crucial to the resolution of this appeal is the interpretation of the participation agreement and the parties' intent regarding it. Extrinsic evidence of intent is admissible to interpret disputed provisions of a contract. The court's purpose in interpreting a contract is to achieve the parties' intent. *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 152–53, 854 P.2d 1134, 1138–39 (1993). In *Taylor* and other recent cases, the Arizona Supreme Court has adopted the approach taken by Professor Corbin and the Restatement (Second) of Contracts allowing

---

1. FARE stands for "Fair Allowance Reimbursement Effort."

2. DRG stands for "Diagnostic Related Groupings."

a court to consider extrinsic evidence of the parties' intent. *Taylor,* 175 Ariz. at 154–55, 854 P.2d at 1140–41; *State Farm Mut. Auto. Ins. Co. v. Wilson,* 162 Ariz. 251, 257–58, 782 P.2d 727, 733–34 (1989); *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.,* 140 Ariz. 383, 389–94, 682 P.2d 388, 394–99 (1984).

■ Before considering extrinsic evidence of the parties' intent, however, we must determine whether the agreement's language is reasonably susceptible to the proposed interpretation. *Taylor,* 175 Ariz. at 154–55, 854 P.2d at 1140–41. This determination is a question of law for the court. *Id.* at 158–59, 854 P.2d at 1144–45. We need not consider evidence of intent that contradicts the written language when:

> ... the asserted meaning of the contract language is so unreasonable or extraordinary that it is improbable that the parties actually subscribed to the interpretation asserted by the proponent of the extrinsic evidence. *See* [3 Arthur L. Corbin, CORBIN ON CONTRACTS § 542, at 101 (1992 Supp.)] "The more bizarre and unusual an asserted interpretation is, the more convincing must be the testimony that supports it." 3 CORBIN § 579, at 420. At what point a judge stops "listening to testimony that white is black and that a dollar is fifty cents is a matter for sound judicial discretion and common sense." *Id.*

*Taylor,* 175 Ariz. at 153, 854 P.2d at 1139. In interpreting the contested provisions of the participation agreement, we must first determine whether the agreement is reasonably susceptible to Scottsdale Memorial's interpretation.

### 2. Third–Party Beneficiaries to Contract

Scottsdale Memorial first asserts that Nahom is not a third-party beneficiary entitled to enforce the participation agreement. Under Arizona law, a person who is not a party to a contract can recover under that contract only if he is a primary beneficiary under the terms of the contract:

> The Arizona rule is that in order for a person to recover as a third-party beneficiary of a contract, an intention to benefit that person must be indicated in the con

tract itself, *Irwin v. Murphey,* 81 Ariz. 148, 302 P.2d 534 (1956); *Basurto v. Utah Construction & Mining Company,* 15 Ariz. App. 35, 485 P.2d 859 (1971). The contemplated benefit must be both intentional and direct, *Irwin, supra, Treadway v. Western Cotton Oil Etc. Co.,* 40 Ariz. 125, 10 P.2d 371 (1932), and "it must definitely appear that the parties intend to recognize the third party as the primary party in interest," *Irwin, supra,* [81 Ariz.] at 154, 302 P.2d at 538.

*Norton v. First Federal Savings,* 128 Ariz. 176, 178, 624 P.2d 854, 856 (1981). *Accord Gonzales v. Palo Verde Mental Health Services,* 162 Ariz. 387, 389, 783 P.2d 833, 835 (App.1989); *Franko v. Mitchell,* 158 Ariz. 391, 398, 762 P.2d 1345, 1352 (App.1988); *Tanner Companies v. Insurance Marketing Services, Inc.,* 154 Ariz. 442, 445, 743 P.2d 951, 954 (App.1987).

Applying the three requirements of *Norton,* we find that the participation agreement provision that Scottsdale Memorial accept as payment in full the DRG rates is clearly a benefit to the subscriber; that benefit is both intentional and direct; and, finally, Mr. Nahom, on behalf of his deceased wife's estate, is the "primary party in interest." *Norton,* 128 Ariz. 176, 178, 624 P.2d 854, 856. Although the Nahoms are not mentioned by name, as subscribers they are clearly third-party beneficiaries of the participation agreement.

The intended benefit may be to "a class of which the third party is a member." *Lake Havasu Resort, Inc. v. Commercial Loan Insurance Corp.,* 139 Ariz. 369, 375, 678 P.2d 950, 956 (App.1983); *Garratt v. Baker,* 5 Cal.2d 745, 56 P.2d 225 (1936). It is sufficient for third-party status to show that the beneficiary is a *member* of a class of beneficiaries intended by the parties. The third-party beneficiary need not be the *sole* beneficiary; that others are also beneficiaries does not diminish the status of either. 17A Am. Jur.2d *Contracts* § 446 (1991). More than one party is benefitted by this agreement. Scottsdale Memorial benefitted from its agreement with Blue Cross by attracting, through favorable rates, a volume of Blue Cross subscribers. Blue Cross benefitted by

its ability to offer subscribers favorable rates at Scottsdale Memorial. However, the class of beneficiaries—the subscribers—are primary beneficiaries of the "payment in full" provision because the major thrust of this provision is to limit their expenses.

Determining whether a third party is a direct beneficiary of the contract or merely an incidental beneficiary requires construing that contract. Ordinarily, this is a question of law for the court. *Maganas v. Northroup,* 135 Ariz. 573, 575, 663 P.2d 565, 567 (1983); *Tanner Companies,* 154 Ariz. at 445, 743 P.2d at 954. To determine whether a third party may enforce the terms of this contract we look to the participation agreement to see if it is reasonably susceptible to Scottsdale Memorial's interpretation.

We agree with the trial court that Blue Cross subscribers are intended third-party beneficiaries of the participation agreement. The agreement is not reasonably susceptible to the interpretation Scottsdale Memorial proposes. The class of Blue Cross subscribers, including Nahom and his wife, is named numerous times throughout the agreement. The effect of the participation agreement is to prevent Scottsdale Memorial from looking to a subscriber for amounts in excess of the DRG amount. The result is a direct, not merely incidental, benefit to the subscribers. The participation agreement, of course, gives Blue Cross a marketing tool for its hospitalization policies and provides a financial incentive for subscribers to choose a participating rather than a nonparticipating hospital where the subscriber could be liable for amounts in excess of the DRG amount. These benefits, real as they are, are dependent upon and therefore secondary to the interests of the subscribers.

Scottsdale Memorial argues that *Fobes v. Blue Cross and Blue Shield,* 176 Ariz. 407, 861 P.2d 692 (App.1993), stands for the proposition that Nahom is not a third party beneficiary to the participation agreement. *Fobes* concerned a bad faith denial of insurance benefits by an individual who was neither an insured nor a claimant under the policy. Contrary to Scottsdale Memorial's assertion, *Fobes* merely held that the tort of bad faith covers only conduct between the insurance company and its insured. Consequently, a stranger to an insurance contract cannot have a bad faith claim. *Fobes* neither supports nor addresses Scottsdale Memorial's position that Nahom cannot be a bona fide third party beneficiary.

### 3. Contractual Limitation on Scottsdale Memorial's Payment

■ Because we agree with the trial court's determination that Blue Cross subscribers are third party beneficiaries under the participation agreement, we must determine whether Scottsdale Memorial may seek additional reimbursement up to the amount of its billed charges from a patient's other insurance. We agree with the trial court that the agreement is not reasonably susceptible to Scottsdale Memorial's interpretation, because it states that Scottsdale Memorial has agreed to accept the FARE/DRG amount "as payment *in full* for covered services performed for subscriber."

■ Scottsdale Memorial bases its argument on a participation agreement provision that prevents duplication of benefits so that Blue Cross will not bear more than its contracted-for share:

### X. NON–DUPLICATION OF BENEFITS

If any services to which Subscribers are entitled under their insurance Plans are also covered under any other group or non-group health plan, prepaid medical plan or insurance policy, BLUE CROSS and INSTITUTION shall cooperate in the coordination of all such benefits in order that the BLUE CROSS Insurance Plan shall bear *no more of the total cost than is required by the subscription agreements, this Agreement, or by Arizona law.* Coordination of benefits shall be based on total billed charges rather than DRGs when BLUE CROSS is secondary, except in those instances when both coverages are DRG based and paid by BLUE CROSS.

(Emphasis added.) This provision allows *Blue Cross* to reduce its payment if a subscriber has other insurance. However, its language does not provide an exemption from

Scottsdale Memorial's agreement to accept the DRG amount as "payment in full." The first sentence does not authorize Scottsdale Memorial to seek additional reimbursement up to its billed charges; instead it limits Blue Cross's payment obligation to "no more of the total cost than is *required by the subscription agreements,* this Agreement, or by Arizona law." (Emphasis added.) Because Blue Cross is a primary, rather than secondary insurer, the last sentence of this provision does not apply.

Scottsdale Memorial's argument relies on the faulty assumption that additional reimbursement from another insurance company is not the equivalent of additional reimbursement from Nahom. Scottsdale Memorial is only an assignee of Nahom's rights under the insurance policies, because the benefits under these policies belong to Nahom and his wife, not to the hospital. Scottsdale Memorial agrees that had there only been the Blue Cross policy, it would have been obligated to accept the DRG amount as payment in full. Seeking additional reimbursement from other insurance, however, is the same as seeking additional amounts from Nahom because the relevant policies had no coordination of benefits clause.

If there is no effective coordination of benefits clause, the majority rule is that the insured who paid for hospitalization coverage is entitled to full benefits under both policies even if this payment exceeds the hospital bills. One insurance treatise analyzes the issue as follows:

> Elsewhere in this work, we gave an analogy to a savings program. If an insured, instead of paying insurance premiums, put an equivalent amount into a savings account, those monies would be available to him in case of need. None could assert a subrogation claim against it; no company could claim a right to a deduction or offset by reason of the existence of such funds. Only if one uses them to purchase insurance may a penalty be invoked. No complaint can properly be forthcoming if the policy, and the advertising which induced its purchase, explicitly spelled out precise situations of noncoverage. The fact is that they rarely do; rather, puffery is resorted to in order to place such contracts—then general language is stretched to avoid liability. An honest [coordination of benefits] provision is not objectionable, nor can one complain where the contract expressly provides that it does not cover hospitalization in a veterans' hospital.... *But if the insurer represents that benefits will be paid irrespective of the existence of any other insurance, it should be required to deliver in accordance with the obligation it has voluntarily undertaken.*

1C John Allen Appleman and Jean Appleman, *Insurance Law and Practice,* § 709 at 536 (1981) (emphasis added).

▋ The general rule is that where two or more insurance policies cover the same hazard and do not provide for coordination of benefits, each policy is primary, and each insurer must pay "all medical expenses that qualify for payment under the policy or plan." *William C. Brown Co. v. General American Life Ins. Co.,* 450 N.W.2d 867, 871 (Iowa 1990). *Cf. State Farm Mut. Auto. Ins. Co. v. Bogart,* 149 Ariz. 145, 717 P.2d 449 (1986) (discusses history of "other insurance" clauses; conflicting clauses unenforceable to amount of loss; loss pro-rated). That a patient or her beneficiaries may receive a payment in excess of the hospital's charges is no defense to the insurance company's obligation to pay on its policy. *See, e.g., Becker v. Central States Health and Life Co. of Omaha,* 431 N.W.2d 354 (Iowa 1988) (patient's insurance must pay medical benefit due under policy despite the fact that medical bills were paid by Medicaid), *overruled on other grounds, Johnston Equipment Corp. v. Industrial Indem.,* 489 N.W.2d 13 (Iowa 1992); *Dorfman v. Aetna Life Ins. Co.,* 342 So.2d 91 (Fla.App.1977) (insurance company must pay charges incurred by patient even though those charges were paid by others). *Cf. Aetna Casualty and Surety Co. v. Scott,* 107 Ariz. 609, 491 P.2d 463 (1971) ("other insurance" clause ambiguous; automobile insurer must pay insured for medical expenses previously recovered from employer's insurer).

Under this rule, a patient "incurs" hospital expenses even if those hospital expenses have already been paid and the patient has

no additional liability. *See, e.g., Hollister v. Government Employees Ins. Co.,* 192 Neb. 687, 224 N.W.2d 164 (1974) (the availability of another source of funds to pay medical bills does not reduce an insurer's obligation to pay benefits); *Black v. American Bankers Ins. Co.,* 478 S.W.2d 434 (Tex.1972) (patient entitled to benefits under policy despite the fact that hospital bills were paid by the government and other insurers); *Niles v. American Bankers Ins. Co.,* 229 So.2d 435 (La. App.1969) (patient "actually incurred" hospital charges paid in part by Medicare; therefore she was entitled to hospital benefits under her insurance policy). *But see Carboni v. Standard Security Life Ins. Co. of New York,* 45 Misc.2d 893, 258 N.Y.S.2d 47 (S.Ct. App.1965) (patient did not "incur" additional expenses paid by another insurance company).[3]

Arizona follows the rule that a person incurs hospitalization charges even if that person would not be personally required to pay those charges due to eligibility for government assistance. *Coconino County v. Fund Administrators Ass'n, Inc.,* 149 Ariz. 427, 430–31, 719 P.2d 693, 696–97 (App.1986). Nahom and his wife, therefore, were entitled to all payments under the policies because of the absence of coordination of benefits clauses.

Because Nahom was entitled to all payments, Scottsdale Memorial's offset of additional billed charges against the Oakmark policy is an attempt to seek additional reimbursement from Nahom. This case thus resembles those involving Medicaid and another insurer where the hospitals are paid Medicaid benefits and the insured is entitled to the cash benefits from the other policy. *See Becker,* 431 N.W.2d 354 (insurer must pay to patient medical expenses already satisfied by Medicaid payments); *Niles,* 229 So.2d 435 (La.App.1969) (under Medicare program, hospital required to absorb loss and could not

charge patient additional amounts; patient entitled to receive benefits under hospitalization policy); *Black,* 478 S.W.2d 434 (Tex. 1972) (patient entitled to benefits under private insurance policy despite fact that hospital bills were paid by Medicare).

Although these cases do not specifically address the issue whether a hospital could increase its reimbursement rather than absorb any loss created by the difference between Medicare/Medicaid payments and its regular rates, these cases do recognize the patient's right to receive a cash payment from private insurance policies lacking an effective coordination of benefits clause where the hospital bills have been previously paid. The majority rule holds that an insured is entitled to double benefits if two policies lack effective coordination of benefits clauses. On these facts, Scottsdale Memorial had no authority to charge Blue Cross subscribers amounts above the DRG or to impose additional charges against other insurance.

*4. Admissions Agreement*

 Scottsdale Memorial also argues that the Conditions of Admission Agreement ("admissions agreement"), which Mrs. Nahom signed upon being admitted, specifically allows it to claim all hospitalization benefits up to the total billed charges. The admissions agreement provides in relevant part:

6. ASSIGNMENT OF INSURANCE BENEFITS: In the event the undersigned is entitled to hospital benefits of any type whatsoever arising out of any policy of insurance insuring patient or any other party liable to patient, said benefits are hereby assigned to Hospital for application on patient's bill, and it is agreed that the hospital may receipt for any such payment and such payment shall discharge the said insurance com-

---

**3.** If Blue Cross had included a coordination of benefits clause making its coverage secondary to Oakmark's coverage, Blue Cross would have been required to pay only the difference between Oakmark's coverage and the billed charges, up to a maximum of the DRG amount. *See Blue Cross and Blue Shield of Alabama, Inc. v. Hendrix,* 385 So.2d 63 (Ala.Civ.App.1980). If both the Oakmark and Blue Cross policies had conflicting coordination of benefits clauses, each company's obligation would be pro-rated. *Bogart,* 149 Ariz. at 153, 717 P.2d at 457. *See also Brown v. State Farm Mut. Auto. Ins. Co.,* 163 Ariz. 323, 328, 788 P.2d 56, 61 (1989) (motor vehicle policies; other insurance clauses may be used to prevent double recovery, but not to prevent recovery of actual damages).

pany of any and all obligations under the policy to the extent of such payment, the undersigned and patient being responsible for charges not covered by this assignment.

7. FINANCIAL AGREEMENT: The undersigned agrees, whether he signs as agent or as patient, and whether or not he is insured or is a member of a health maintenance organization, that in consideration of the services to be rendered to the patient, he hereby individually obligates himself to pay the account of the hospital in accordance with the *regular rates and terms* of the hospital. Should the account be referred to an attorney for collection, the undersigned shall pay reasonable attorney's fees, collection expense, and interest if applied. (emphasis added)

Scottsdale Memorial argues that by this agreement, Mrs. Nahom assigned to it all benefits up to the amount due under regular billed rates.

Scottsdale Memorial's position is undercut by concessions that if Blue Cross had been the only insurer, Mrs. Nahom would not have been liable for additional charges beyond the DRG amounts. It cannot then argue that a Blue Cross subscriber has personal liability for the difference between the DRG amount and billed charges. Without additional insurance Scottsdale Memorial clearly would be required to absorb the difference. This result is not changed by the fact that Mrs. Nahom assigned her insurance benefits to it. The existence of other insurance provides no basis for increasing a patient's hospital bill. Mrs. Nahom's bill was paid when Scottsdale Memorial accepted Blue Cross's DRG payment as "payment in full." Scottsdale Memorial should have refunded to Mrs. Nahom's estate amounts it received in excess of the DRG amount, just as it refunded monies it received in excess of billed charges.

The hospital also argues that the term "regular rates and terms" in section 7 is the equivalent of "billed charges." Clearly, a subscriber covered under the Blue Cross ExecuCare Policy can expect "regular rates and terms" to be no more than the DRG amounts. Scottsdale Memorial agreed to ac-cept DRG amounts as payment in full, and Blue Cross directed patients to the hospital because it agreed to limit its charges to the contracted-for DRG amounts.

Scottsdale Memorial's argument that by signing the admissions agreement Mrs. Nahom waived any right to limit her hospital bill to the DRG amount is not supported by the record. No evidence shows that Mrs. Nahom intended to relinquish her right to claim excess insurance in signing the admissions agreement. To prove a valid waiver, Scottsdale Memorial must show she voluntarily and intentionally relinquished a right she knew she had. *Matter of Appeals in Juvenile Actions,* 167 Ariz. 591, 592–93, 810 P.2d 589, 590–91 (App.1990); *Goglia v. Bodnar,* 156 Ariz. 12, 19, 749 P.2d 921, 928 (App.1987). In addition, "[d]oubtful cases will be decided against waiver." *Goglia,* 156 Ariz. at 19, 749 P.2d at 928. It seems unlikely that in the rush of requiring hospitalization and signing the admissions agreement, Mrs. Nahom intended to sign away rights of which she was unaware.

Although ordinarily a finding of waiver is a question of fact, Scottsdale Memorial's evidence is simply insufficient. *See Orme School v. Reeves,* 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). Therefore, we affirm the trial court's judgment against Scottsdale Memorial. In addition, we award Nahom his attorneys's fees on this appeal. A.R.S. § 12–341.01.A.

### *Nahom v. Blue Cross Blue Shield (1 CA–CV 92–0495)*

When Nahom discovered Blue Cross agreed with Scottsdale Memorial's argument that it was not required by the participation agreement to limit its charge to the DRG amount (a position substantially undercut by Blue Cross's acknowledgement in oral argument that the Nahoms are third-party beneficiaries), he amended his complaint to add three claims against Blue Cross: breach of contract, bad faith, and consumer fraud. Blue Cross argues that because it paid Scottsdale Memorial the amount required under the ExecuCare contract, there was no breach of contract, bad faith, consumer fraud, nor any damage.

## 1. Contract Claim

Nahom's claim rests on his contention that the ExecuCare policy required Blue Cross to enter into agreements with participating hospitals to accept Blue Cross's FARE/DRG payment as payment in full.[4] Scottsdale Memorial was certainly a participating hospital under this policy, and billed charges certainly exceeded the FARE amount. Nahom argues that even though Blue Cross paid the required DRG amount, a breach occurred when Blue Cross allowed Scottsdale Memorial to seek more than the FARE/DRG amount. We hold that the participation agreement required Scottsdale Memorial to accept the DRG amount as payment in full and that the hospital had no authority to seek additional reimbursement. Nahom's contract claim against Blue Cross fails because Blue Cross did in fact obtain the type of contract Nahom claims it should have.

## 2. Breach of Duty of Good Faith and Fair Dealing

 In addition to claiming that Blue Cross breached the terms of the ExecuCare policy by failing to enter into an appropriate agreement with Scottsdale Memorial, Nahom argues that Blue Cross breached its contractual duty of good faith and fair dealing by misrepresenting the terms of the participation agreement, failing to disclose a secret agreement that allowed Scottsdale Memorial to seek additional reimbursement, and taking the position that the ExecuCare contract did not prevent Scottsdale Memorial from seeking additional reimbursement. Nahom also argues that Scottsdale Memorial's employees' misrepresentations can be imputed to Blue Cross because Scottsdale Memorial and Blue Cross are joint venturers.

 In Arizona, to prevail on a claim that an insurance company committed the tort of bad faith, the insured must prove that the insurance company breached its implied contractual duty of good faith and fair dealing by showing both that the insurer acted unreasonably and that it either knew its conduct was unreasonable or "acted with such reckless disregard that such knowledge could be imputed to it." *Deese v. State Farm,* 172 Ariz. 504, 507, 838 P.2d 1265, 1268 (1992). The insured need not show that the insurance company breached its contract by failing or unreasonably delaying the payment of an insurance claim. *Id.,* 172 Ariz. at 506–08, 838 P.2d at 1267–69; *Rawlings v. Apodaca,* 151 Ariz. 149, 154, 726 P.2d 565, 570 (1986). As the Arizona Supreme Court has stated:

> "[T]he insurance contract and the relationship it creates contain more than the company's bare promise to pay certain claims when forced to do so; implicit in the contract and the relationship is the insurer's obligation to play fairly with its insured."

*Deese,* 172 Ariz. at 507, 838 P.2d at 1268, *quoting Rawlings,* 151 Ariz. at 154, 726 P.2d at 570. That Blue Cross timely paid the DRG amount to Scottsdale Memorial for Mrs. Nahom's hospitalization does not necessarily eliminate Nahom's bad faith claim.

Nahom first claims that Blue Cross misrepresented its contract with Scottsdale Memorial and failed to disclose the "secret limitation" on the contract terms allowing it to seek additional reimbursement. As discussed at length above, we find that Blue Cross's contract limited Scottsdale Memorial's payment to the DRG amount. Therefore, there was no misrepresentation and no secret agreement allowing Scottsdale Memorial to seek additional reimbursement. Because there is no evidence for Nahom's claim,

---

4. The relevant provision of the ExecuCare policy provides:

> Your [the Nahoms'] share of payment for your health care expenses is directly related to whether you receive services from a Participating Provider or a non-Participating Provider. Participating Providers have a Participation Agreement with the Corporation. Payment for Covered Services will be made directly by the Corporation to the Participating Providers.... Participating Hospitals have agreed to accept the FARE amount as payment in place of billed charges for Covered Services. You will be responsible for payment of any unsatisfied annual Deductible and Coinsurance based on the FARE amount until the Coinsurance Maximum (Stop Loss) is reached as indicated on the Schedule Page. However, if the Hospital's billed charges for Covered Services are less than the FARE amount, their obligation to the Hospital will be based on the billed charges.

the trial court properly granted summary judgment to Blue Cross on this claim.

Nahom also claims Blue Cross breached its covenant of good faith and fair dealing via the statements its employees made to Scottsdale Memorial regarding additional reimbursement from Nahom's other insurance. Nahom argues that Blue Cross thereby violated its agreement to accept the DRG amount as payment in full. Because we agree that the participation agreement does not allow Scottsdale Memorial to seek additional reimbursement, and that the ExecuCare contract requires that participating hospitals accept the DRG amount as payment in full, we find that Blue Cross employees' statements that Scottsdale Memorial could seek additional reimbursement were unfounded.

The evidence before the trial court, however, does not support the conclusion either that Blue Cross employees knew that their statements to Scottsdale Memorial were unreasonable or that they acted with reckless disregard in making these statements. Although ordinarily these are questions of material fact, the actions alleged do not approach the tort of bad faith. No Blue Cross employees were shown to have attempted to hide information detrimental to Blue Cross. *Cf. Rawlings,* 151 Ariz. 149, 726 P.2d 565 (insurer failed to cooperate with insured in the disclosure of a fire investigation where another insured was shown to be liable for causing the fire). Nor is this a case where the insured claims the insurance company acted unfairly in processing the claim. *Cf. Deese,* 172 Ariz. 504, 838 P.2d 1265 (insured claimed that insurance company's adjustment practices unfairly attempted to limit payment on insured's medical bills).

Scottsdale Memorial asked Blue Cross to interpret the participation agreement to determine whether it could seek additional reimbursement from a subscriber's other insurance. Even though we find that Blue Cross misinterpreted the participation agreement, there is no reason to conclude that its interpretation is so unreasonable or self-serving to constitute bad faith.

■ Nahom also argues that Blue Cross is vicariously responsible for Scottsdale Memorial's actions because they were both joint venturers in providing hospital services to Blue Cross subscribers. To show a joint venture, Nahom must show that Scottsdale Memorial and Blue Cross had "an agreement, a common purpose, a community of interest and an equal right of control." *Sparks v. Republic Nat'l Life Ins. Co.,* 132 Ariz. 529, 540, 647 P.2d 1127, 1138 (1982). Nahom's evidence is insufficient for such a showing.

The participation agreement itself expressly states that Blue Cross and Scottsdale Memorial are not joint venturers. The agreement requires that Scottsdale Memorial determine the method of providing medical services and allows it to have a separate contractual relationship with the subscriber in providing such services. The agreement requires Blue Cross to establish payment amounts via DRG rates. Scottsdale Memorial and Blue Cross did not control each other's actions but had wholly separate rights affecting either the provision of medical services or the processing of an insurance claim.

Nahom has failed to show a common purpose or a community of interest. Blue Cross's interest is to limit its expenses in providing medical insurance; Scottsdale Memorial's interest is to attract insured patients so that it can profitably provide hospital services. These are hardly common interests.

■ Nahom also argues that pursuant to A.R.S. section 20–826(B), a joint venture exists because both are obligated to comply with the terms of the ExecuCare policy. The statute provides:

> Each contract [between a hospital service corporation and its subscribers] shall plainly state the services to which the subscriber is entitled and those to which the subscriber is not entitled under the plan, and shall constitute a direct obligation of the providers of services with which the corporation has contracted for hospital, medical, dental or optometric services.

A.R.S. § 20–826(B).

Although the statute can be read to say: "Each contract ... shall constitute a direct obligation of the providers of services," it

does not transform parties with different but complementary interests such as an insurance company and a hospital into joint venturers. Instead, this statute requires hospitals contracting with an insurer to provide all hospital services under the insurer's contract with the insured. The statute regulates the terms of the insurance contract between the insurer and the insured, mandating certain benefits and other policy provisions. Thus, the statute requires medical service providers who contract with Blue Cross to make available to Blue Cross subscribers those medical services in the insurance contract. Without this provision, providers could deny services mandated under an insurance policy, a result the legislature prohibited. The statute is no basis for imputing any tortious acts of Scottsdale Memorial to the insurance company.

### 3. Consumer Fraud

Nahom also claims that Blue Cross violated the Consumer Fraud Act by misrepresenting to subscribers that participating hospitals would limit hospital charges to the DRG amount. Arizona's Consumer Fraud Act provides:

> The act, use, or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived, or damaged thereby, is declared to be an unlawful practice.

A.R.S. § 44–1522.A. *See also* A.R.S. § 20–443. The elements of a private cause of action for consumer fraud are "a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and the hearer's consequent and proximate injury." *Parks v. Macro–Dynamics, Inc.*, 121 Ariz. 517, 520, 591 P.2d 1005, 1008 (App.1979).

Nahom's consumer fraud claim against Blue Cross is a fallback argument that Nahom advances only in the event that Scottsdale Memorial's contract interpretation pre-

vails. Our rejection of Scottsdale Memorial's contract interpretation, therefore, defeats this claim.

### 4. Attorneys' Fees

Blue Cross requests its attorneys' fees pursuant to A.R.S. section 12–341.01, on the ground that Nahom's claims arose under his insurance contract with Blue Cross. We agree as to the contract and the bad faith claims and, therefore, award to Blue Cross its attorneys' fees incurred in responding to Nahom's appeal on these claims. *See Sparks v. Republic Nat'l Life Ins. Co.*, 132 Ariz. 529, 544, 647 P.2d 1127, 1142 (1982).

We decline to award fees for defense of the consumer fraud claim on appeal. In a similar misrepresentation action under the insurance code, the Arizona Supreme Court held that attorneys' fees were not recoverable pursuant to contract because the consumer fraud action sounded in tort and was not based on a breach of a term or an implied term of the insurance contract. *Sparks*, 132 Ariz. at 544, 647 P.2d at 1142. The Consumer Fraud Act provides that the attorney general may recover attorneys' fees for a Consumer Fraud Act violation. A.R.S. § 44–1534. We find no authority for awarding fees to a private party in connection with a private action under the Consumer Fraud Act. Therefore, we limit the award of fees on appeal to Blue Cross's defense on the claims of breach of contract and the tort of bad faith.

### CONCLUSION

For the foregoing reasons, we affirm the trial court's judgments in these consolidated appeals. We further award Nahom his attorneys' fees and costs for his defense on appeal in 1 CA–CV 93–0018. We award Blue Cross its costs on appeal and its attorneys' fees in defense of the appeal of the breach of contract and bad faith claims in 1 CA–CV 92–0495, in an amount to be determined upon filing the statement required by Rule 21, Arizona Rules of Civil Appellate Procedure.

Noel FIDEL, P.J., and Grant, J., concur.