**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



FILED

DEC 13 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| COUNTY OF MARICOPA, a political subdivision of the State of Arizona, <br><br> Plaintiff-Appellant, <br><br> v. <br><br> OFFICE DEPOT, INC., a Delaware corporation, <br><br> Defendant-Appellee. | No. 16-17342 <br> 17-15411 <br> 17-16155 <br><br> D.C. No. 2:14-cv-01372-HRH <br><br> MEMORANDUM* |
| COUNTY OF MARICOPA, a political subdivision of the State of Arizona, <br><br> Plaintiff-Appellee, <br><br> v. <br><br> OFFICE DEPOT, INC., a Delaware corporation, <br><br> Defendant-Appellant. | No. 17-16237 <br><br> D.C. No. 2:14-cv-01372-HRH |

Appeal from the United States District Court
for the District of Arizona
H. Russel Holland, District Judge, Presiding

Argued and Submitted August 15, 2018
San Francisco, California

_____

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before: O'SCANNLAIN and BEA, Circuit Judges, and STEARNS,** District Judge.

Plaintiff-Appellant Maricopa County (Maricopa) appeals: (1) the District Court's order dismissing its fraud claims and certain of its contract claims against Defendant-Appellee Office Depot, Inc. (Office Depot); and (2) the District Court's subsequent order entering summary judgment for Office Depot on its remaining contract claims. Office Depot cross-appeals the District Court's reduction of its requested award of attorneys' fees. We affirm the District Court's dismissal of the fraud claims and Maricopa's breach of contract claims based on Section 23 of the Master Purchase Agreement. We reverse the entry of summary judgment for Office Depot on the breach of contract claim arising out of the Pricing Commitment contained in the Administration Agreement, as well as an associated claim for breach of the duty of good faith and fair dealing. In light of our reversal of the summary judgment order, we vacate the order reducing Office Depot's requested attorneys' fees and remand the remaining claims for trial.

A claim will survive a motion to dismiss if the well-pleaded factual allegations, taken as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will survive summary judgment unless there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

---

** The Honorable Richard G. Stearns, United States District Judge for the District of Massachusetts, sitting by designation.

242, 248 (1986).   The District Court's interpretation of a contract is a question of law that is subject to *de novo* review.  *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012).

Because the parties are familiar with the facts of this case, we repeat them only as necessary to explain our decision.

This case arose out of a public procurement program, facilitated by a non-profit association of government agencies called U.S. Communities, of which Maricopa is a member.  Under the program, municipal entities pool their purchasing power to obtain discounted office supplies from suppliers.  Insofar as relevant here, U.S. Communities designated Los Angeles (LA) County the "lead public agency" for purposes of negotiating a Master Agreement for the purchase of office supplies from Office Depot.  Section 23 of the Master Agreement provided:

> VENDOR [Office Depot] represents that the price charged to [Los Angeles] COUNTY in this Agreement do[es] not exceed existing selling prices to other customers for the same or substantially similar items or services for comparable quantities under similar terms and conditions.
>
> If VENDOR's prices decline, or should VENDOR, at any time during the term of this Master Agreement, provide the same goods or services under similar quantity and delivery conditions to the State of California or any county, municipality or district of the State at prices below those set forth in the Master Agreement, then such lower prices shall be immediately extended to COUNTY.

Under the Master Agreement, members of U.S. Communities had the right to "piggyback" on the pricing terms negotiated by LA County.  Section 36 of the Master Agreement provided:

3

> The COUNTY has designated U.S. Communities Purchasing and Finance Agency . . . as the agency to provide administrative services related to purchases by other governmental entities (Participating Public Agencies) under this Agreement.

> At COUNTY's sole discretion and option, and upon VENDOR entering into the requisite U.S. Communities Administration Agreement, Participating Public Agencies may acquire items listed in this Agreement. Such acquisition(s) shall be at prices stated in this Agreement, or lower.

The "U.S. Communities Administration Agreement," referenced in Section 36, was a contract between U.S. Communities and Office Depot, and it included the following Pricing Commitment required of Office Depot under the original bid request:

> A commitment that supplier's U.S. Communities pricing is the lowest available pricing (net to buyer) to state and local public agencies nationwide and a further commitment that, if a state or local public agency is otherwise eligible for lower pricing through a federal, state, regional or local contract, the supplier will match the pricing under U.S. Communities.

Maricopa learned that Office Depot was selling goods to the City and County of San Francisco (San Francisco) at prices lower than those offered under the Master Agreement. When Office Depot refused to extend equivalent prices to Maricopa, the County sued. On appeal, Maricopa argues that the Pricing Commitment obligated Office Depot to offer San Francisco's prices to Maricopa.

1. The District Court did not err when it dismissed Maricopa's claims for statutory consumer fraud, common-law fraud, and negligent misrepresentation, because those claims were not pleaded with the requisite particularity. *See* Fed. R.

4

Civ. P. 9(b). Moreover, it was not error for the District Court to deny Maricopa the chance to amend because the theory on which its claims were based (*i.e.*, that Office Depot misrepresented the scope of its obligations under the contract) does not constitute actionable fraud under Arizona law. *See Apolito v. Johnson*, 413 P.2d 291, 295 (Ariz. Ct. App. 1966).

2.      The District Court did not err when it granted Office Depot's motion to dismiss Maricopa's contract claims based on the Master Agreement. "The Arizona rule is that in order for a person to recover as a third-party beneficiary of a contract, an intention to benefit that person must be indicated in the contract itself. The contemplated benefit must be both intentional and direct, and 'it must definitely appear that the parties intend to recognize the third party as the primary party in interest.'" *Nahom v. Blue Cross & Blue Shield of Arizona, Inc.*, 885 P.2d 1113, 1117 (Ariz. Ct. App. 1994) (citations omitted). Under the Master Agreement's plain terms, Maricopa could enforce only Section 36. The Agreement did not authorize piggybacking agencies such as Maricopa to enforce the price guarantee secured to LA County in Section 23. That right vested exclusively in LA County. Moreover, the implicit contract created by the business relationship between Maricopa and Office Depot, to the extent that any such contract existed, does not empower Maricopa to enforce provisions of contracts executed by other parties. Therefore, as the District Court concluded, Maricopa lacks standing to enforce Section 23 against Office Depot.

3.     The District Court erred when it granted summary judgment for Office Depot because material disputes of fact remain.  We accept the District Court's determination that the Pricing Commitment was ambiguous as to whether the Administration Agreement required Office Depot to provide piggybacking entities with the lowest pricing that Office Depot offered to any state or local government entity nationwide, including San Francisco (Maricopa's position),[1] or whether "available" meant the price the public agency would actually receive under another cooperative purchasing agreement for which it was eligible to participate (Office Depot's position).[2]  But we disagree with the District Court's determination that the extrinsic evidence entitled Office Deport to summary judgment.

While much of the extrinsic evidence (particularly statements made by officers and the general counsel of U.S. Communities) was favorable to Office Depot's interpretation of the Pricing Commitment, statements made by sales executives of Office Depot, and particularly the testimony of Robert Cetina, Office Depot's Vice-President of Government and Education Services, who executed the Master Agreement on its behalf, raise disputes of material fact as to its meaning.  These disputes must be resolved by a jury.  *See Cachil Dehe Band of Wintun Indians*

---

[1] Notably, Maricopa concedes in its opening brief that "[t]he District Court correctly ruled that the Pricing Commitment in the Administration Agreement was ambiguous . . . ."

[2] It is undisputed that the contract between Office Depot and the City and County of San Francisco did not permit piggybacking and that Maricopa therefore was not an "eligible" participant in that agreement.

6

*v. California*, 618 F.3d 1066, 1077 (9th Cir. 2010) ("[W]hen there is a material conflict in extrinsic evidence supporting competing interpretations of ambiguous contract language, the court may not use the evidence to interpret the contract as a matter of law, but must instead render the evidence to the factfinder for evaluation of its credibility.").

4.     After judgment was entered, Office Depot requested an award of $1,076,687.35 in attorneys' fees.  The District Court made several downward adjustments and across-the-board cuts in the fee petition, which is the subject of the cross-appeal.  Given our decision to remand the claims associated with the Pricing Commitment for trial, we vacate the award of attorneys' fees and moot the cross-appeal.

**AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART, AND REMANDED.**  Each party will bear its own costs.



*County of Maricopa v. Office Depot, Inc.*, Nos. 16-17342, 17-15411, 17-16155, 17-16237

O'SCANNLAIN, J., concurring in part and dissenting in part:

I concur in Parts 1, 3, and 4 of the majority disposition. I respectfully dissent, however, from Part 2, which affirms the dismissal of Maricopa County's claims for breach of the Master Agreement. I would hold that Maricopa has raised a viable claim for breach of its rights under the Agreement.

I

Office Depot concedes, and there is thus no dispute, that Maricopa has standing to sue for breach of its third-party rights under Section 36 of the Master Agreement. That section promises Maricopa the right to "acquire items listed in this Agreement . . . at the prices stated in this Agreement, or lower." The critical question, then, is the scope of Maricopa's right to purchase items "at the prices stated in [the Master] Agreement"—and specifically whether it includes the right to enforce certain price reductions required by Section 23 of the Agreement. More to the point, because Maricopa's claim for breach of the Master Agreement was dismissed for failure to state a claim, our question is whether it is *plausible* that Maricopa's right to purchase at the "prices stated in this Agreement" incorporates the price reductions set forth in Section 23. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). I find it hard to conclude that Maricopa's argument is not at least plausible.

1

## II

Office Depot concedes that, under Section 36, Maricopa has "the right to purchase products at the same prices as Los Angeles County," and to "enforce those rights" against Office Depot. And Office Depot concedes that, under Section 23 of the Master Agreement, L.A. County itself is entitled to purchase at lower prices that Office Depot separately offered to other California governmental entities, including of course to San Francisco. Further still, Office Depot concedes that "if Los Angeles County received lower prices through the operation of Section 23, Maricopa would thereafter be entitled to purchase products under those prices—and to enforce those prices pursuant to Section 36." Thus, as I see it, the only possible dispute is whether Maricopa is automatically entitled to purchase at these same lower prices, or whether it has to wait for L.A. County to take advantage of such prices first.

## A

Office Depot argues that Maricopa does indeed have to wait for L.A. County to act first. Office Depot contends that any price reduction that flows from Section 23 would essentially be an amendment to the contract's pricing scheme and is therefore enforceable only by L.A. County, the lead agency with "sole responsibility for approving changes to contract pricing during the life of the contract." Thus, Office Depot argues, Maricopa itself cannot take advantage of

2

those lower prices until L.A. County first amends the pricing scheme of the contract.

The majority appears uncritically to accept Office Depot's view of the contract, stating that "Maricopa could enforce only Section 36" of the Agreement, and could not "enforce the price guarantee secured to L.A. County in Section 23." Majority Disposition at 5.  But such observations merely beg the question.  Of course Maricopa cannot enforce portions of the Master Agreement that do not pertain to its own rights under Section 36.  But that is the very question we must answer: whether the price-match guarantee of Section 23 *is* part of the "prices stated in this Agreement" that Section 36 entitles Maricopa to enforce.  Perhaps Office Depot's view that the price-match guarantee is not part of the "prices stated in this Agreement" is reasonable.  But it is hardly the only reasonable interpretation.

B

I find Maricopa's competing interpretation of the contract at least as persuasive as Office Depot's (if not more so).  As Maricopa argues, price reductions under Section 23 are not "changes" to the contract pricing at all but are built directly into the contract's standard pricing scheme.  Indeed, Section 23 provides for an *automatic* price reduction to match relevant lower prices.  Once Office Depot sells products at a lower price to some other California entity,

3

Section 23 requires that such lower prices "shall be immediately extended" to L.A. County with no further action by L.A. County required. There is, in short, no amendment process contemplated in Section 23. Its price-matching guarantee is self-executing. Thus, Section 23 is just one aspect of the standard pricing structure that was already "negotiated by Los Angeles County," and that is in place under the Master Agreement. It requires no further act of contract administration to take effect.

Under this view, piggybacking agencies' right to take advantage of the price reductions provided in Section 23 is inherent in their unquestioned "right to purchase products at the same prices as Los Angeles County." Because such lower prices are to be automatically extended to L.A. County, they are to be automatically extended to those agencies which have the right to purchase at L.A. County's prices. This does not mean that piggybacking agencies can generally step into L.A. County's shoes under the contract. Rather, it simply recognizes that the "prices stated in this Agreement" referenced in Section 36 incorporate all aspects of the contract's established pricing scheme—including the automatic price-lowering mechanism of Section 23.

C

Even if Maricopa's interpretation is not clearly correct, it suggests that the language of Section 36—and of Maricopa's right to purchase "at the prices stated

4

in this Agreement"—is at least ambiguous.  The parties at a minimum should have been directed to discover and to present extrinsic evidence bearing on its meaning, just like they did with respect to Maricopa's claim for breach of the Administration Agreement.  *See Taylor v. State Farm Mut. Auto. Ins. Co.*, 854 P.2d 1134, 1140 (Ariz. 1993).  The district court cut that process off entirely by dismissing Maricopa's claim at the pleading stage.

I believe such dismissal was in error and that it is premature to conclude that Maricopa cannot prevail, as a matter of law, on its claim for breach of Section 36 of the Master Agreement.