NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

BROCK FAMILY PARTNERSHIP, LLP, et al., *Plaintiffs/Appellants*,

*v.*

TELLURIAN DEVELOPMENT COMPANY, *Defendant/Appellee*.

No. 1 CA-CV 21-0419
FILED 3-8-2022

Appeal from the Superior Court in Maricopa County
No. CV2020-095704
The Honorable Danielle J. Viola, Judge

**AFFIRMED**

COUNSEL

Brooks & Affiliates PLC, Mesa
By David P. Brooks
*Counsel for Plaintiffs/Appellants*

Burch & Cracchiolo PA, Phoenix
By Ralph D. Harris, Andrew Abraham
*Counsel for Defendant/Appellee*

_____

**MEMORANDUM DECISION**

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Randall M. Howe and Judge James B. Morse Jr. joined.

_____

**C A M P B E L L**, Judge:

¶1 Brock Family Partnership, LLP and Brock Properties II, LLC (collectively, Brock) challenge the dismissal of their complaint seeking to enforce an amended agreement between Tellurian Development Company (Tellurian) and the City of Tempe (the City) under which Tellurian agreed to "use its commercial best efforts to work with other owners to include a circulation plan for connectivity to benefit all parcels adjacent to the Tellurian Properties." The superior court determined that Brock is not a third-party beneficiary of the amended agreement and therefore cannot sue to enforce its terms. We agree and affirm.

**BACKGROUND**

¶2 Because Brock appeals from the dismissal of its complaint, we state the relevant fact allegations and assume they are true for purposes of this appeal. *Sullivan v. Pulte Home Corp.*, 232 Ariz. 344, 345, ¶ 2 (2013).

¶3 Miravista Holdings, LLC (Miravista) and the City entered into land development agreements in 2003 and 2009. The 2009 Development Parcel Agreement (Development Agreement) provided that Miravista would develop and improve certain land and enter lease agreements with the City that would provide Miravista with property tax abatements.

¶4 Tellurian acquired properties within the scope of these agreements and assumed Miravista's rights, duties, and obligations under the Development Agreement in a 2014 Assumption and Modification Agreement (the Assumption Agreement). Tellurian and the City amended the Assumption Agreement in 2015 (the First Amendment) and again in 2016 (the Second Amendment). As relevant to this appeal, paragraph 5 of the Second Amendment provides:

> Section 7.1 of the [Development Agreement] is hereby amended to add the following to the last sentence thereof: "Without limiting the foregoing, Tellurian specifically

acknowledges and agrees that it shall use its commercial best efforts to work with other owners to include a circulation plan for connectivity to benefit all parcels adjacent to the Tellurian Properties."

Paragraph 6.4, however, disclaims any intention to make any "other owners" third-party beneficiaries of the agreement:

> No term or provision of this Second Amendment is intended to be for the benefit of any person, firm, organization, or corporation not a party hereto, and no other person, firm, organization, or corporation may have any right or cause of action hereunder.

Paragraph 5.4 of the Assumption Agreement contains the same language. Similar language also appears in paragraph 7.15 of the Development Agreement:

> [N]o person is bound by (or entitled to) the burdens and benefits of this Agreement unless such burdens are expressly assumed by or such benefits are expressly assigned to such person.

**¶5** Brock owns two parcels adjacent to Tellurian's properties. Brock sued Tellurian in 2020, contending that Tellurian breached the Second Amendment by not making "commercial best efforts . . . to provide for connectivity to [Tellurian's property] by [Brock]." Upon Tellurian's motion, the superior court dismissed Brock's complaint under Arizona Rule of Civil Procedure (Rule) 12(b)(6), finding that the disclaimers quoted above barred Brock from suing to enforce the Second Amendment.

**¶6** Brock timely appealed from the superior court's final judgment.

## DISCUSSION

I. **The Superior Court Did Not Abuse Its Discretion in Addressing Tellurian's Noncompliance with Rule 12(j).**

**¶7** Brock contends the superior court should have summarily denied Tellurian's motion for noncompliance with Rule 12(j), which states that "[a] good faith consultation certificate complying with Rule 7.1(h) must accompany any motion brought under (b)(3), (b)(6), (c), or (f) of [Rule 12]." A "good faith consultation certificate" is "a separate statement certifying

and demonstrating that the movant has tried in good faith to resolve the issue by conferring with—or attempting to confer with—the party or person against whom the motion is directed." Ariz. R. Civ. P. 7.1(h). Tellurian did not file any such statement. After Brock noted the omission, Tellurian filed a reply in which it apologized and advised the court that counsel for the parties had attempted to resolve the matter and further consultation would have been futile.

¶8        To date, no Arizona court has interpreted Rule 12(j). When interpreting a civil procedure rule, we seek to give effect to our supreme court's intent in promulgating it. *In re Restated Trust of Crystal H. W.*, 249 Ariz. 355, 357-58, ¶ 7 (App. 2020). If a rule is clear and unambiguous, we will not look beyond its language to determine that intent. *Id.* at 358, ¶ 7.

¶9        Brock contends the filing of a good faith consultation certificate is mandatory based on the use of "must" in Rule 12(j). The rule does not, however, set forth any specific consequences of noncompliance, and Brock cites no authority suggesting denial of a motion is mandatory if a party fails to file a good faith consultation certificate with any other motion for which one is required. *See* Ariz. R. Civ. P. 5.4(d)(3), 11(c)(2)(A), 11(c)(3)(c), 26(i), 37(a)(1), 37(f)(1)(B), 45.2(d)(2), 45.2(e)(1)(A).

¶10        Brock also cites *Crystal H. W.* for the proposition that the filing of the good faith consultation certificate is mandatory. But *Crystal H. W.* did not involve a good faith consultation certificate; it instead interpreted Rule 54(g)(1), which requires a party seeking attorneys' fees to give notice of its claim either in the pleadings or in a Rule 12 motion filed before its responsive pleading. 249 Ariz. at 358, ¶ 8. This court held the noncompliant party forfeited its fee claim by not giving proper notice that attorneys' fees would be sought, thus defeating "the rule's purpose of encouraging [the opposing party] to settle to avoid the risk of a fee assessment." *Id.* at 359, ¶ 15. No such concerns are present here, as Brock had a full and fair opportunity to respond to Tellurian's motion.

¶11        The superior court also found that Brock "ha[d] not requested an opportunity for leave to amend based on the failure to meet and confer" and had "identif[ied] no prejudice based on the lack of compliance." Brock does not dispute these findings. Under these facts, any error was harmless, and the court was not obligated to summarily deny Tellurian's motion. *See Creach v. Angulo*, 189 Ariz. 212, 214-16 (1997) (finding harmless error in failing to attach required affidavits when appellants "have shown no prejudice and merely demand compliance with a technical rule"); *see also Schwab v. Ames Constr.*, 207 Ariz. 56, 60, ¶ 17 (App. 2004) (applying abuse of

discretion review to rulings under Rule 7.1). We therefore address the motion's merits.

## II.    Brock Is Not a Third-Party Beneficiary of the Second Amendment.

**¶12**        We review the dismissal of a complaint under Rule 12(b)(6) de novo. *CVS Pharmacy, Inc. v. Bostwick*, 251 Ariz. 511, 516, ¶ 10 (2021). We accept all well-pleaded facts as true and give Brock the benefit of all inferences arising therefrom. *Botma v. Huser*, 202 Ariz. 14, 15, ¶ 2 (App. 2002). We will affirm only if Brock would not have been entitled to relief under any interpretation of the facts susceptible of proof as a matter of law. *Mesnard v. Campagnolo*, 251 Ariz. 244, 248, ¶ 11 (2021).

**¶13**        Brock contends it was a third-party beneficiary of the Second Amendment because paragraph 5, quoted above, "reflects an intent to benefit adjacent parcel owners" by contemplating "a connectivity plan . . . to benefit adjacent property owners." Under Arizona law, a party outside of a contract may recover as a third-party beneficiary only if (1) an intention to benefit the claimant is indicated in the contract; (2) the contemplated benefit is both intentional and direct; and (3) it definitely appears the parties intended to recognize the third party as the primary party in interest. *Nahom v. Blue Cross & Blue Shield of Ariz., Inc.*, 180 Ariz. 548, 552 (App. 1994) (internal quotation omitted). Whether a third party is an intended or incidental beneficiary of a contract is a question of law. *Sherman v. First American Title Ins. Co.*, 201 Ariz. 564, 566-67, ¶ 5 (App. 2002).

**¶14**        The complaint sufficiently alleges that the Second Amendment, if carried out, could benefit Brock. But merely showing a possible benefit does not confer third-party beneficiary status. *Nahom*, 180 Ariz. at 552. Read in its entirety, the Second Amendment expressly and unambiguously disclaims any intent to benefit anyone other than the named parties and precludes any non-contracting party from maintaining a cause of action seeking to enforce its terms.

**¶15**        Despite the Second Amendment's clear language, Brock contends third-party beneficiary status can be found "where recognition of the right to performance in the beneficiary is appropriate to effectuate the intention of the parties, and the circumstances indicate that the promisee intended to give the beneficiary the benefit of the promised performance," citing *Supplies for Industry, Inc. v. Christensen*, 135 Ariz. 107, 109 (App. 1983). In *Christensen*, we determined that Supplies for Industry (SFI) was an intended third-party beneficiary because the agreement at issue named SFI as "the subsidiary or subsidiaries or division or divisions of the Company

which from time to time in the future operate the business conducted by [SFI]." *Id.* at 108-09. As such, "[t]he obvious purpose of the covenant not to compete was to protect the business operated by SFI even if SFI should change its name." *Id.* at 109.

**¶16** *Christensen* also relied on Restatement (Second) of Contracts § 302(1) (1982) (Restatement), which provides:

> Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and . . .
>
> > (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

*See Christensen*, 135 Ariz. at 109. Here, Tellurian and the City "otherwise agreed" that no unnamed parties had rights under the Second Amendment.

**¶17** Citing Restatement § 308, Brock argues that "[i]t is not essential to the creation of a right in an intended beneficiary that he be identified when a contract containing the promise is made," contending that the Second Amendment more generally identifies owners of "parcels adjacent" as the primary parties in interest. Brock also relies on *Nahom*, in which we stated that "[i]t is sufficient for third-party status to show that the beneficiary is a member of a class of beneficiaries intended by the parties." 180 Ariz. at 552 (emphasis omitted). But there, we found a clear intent to provide a direct benefit to an identified class:

> The class of Blue Cross subscribers, including Nahom and his wife, is named numerous times throughout the agreement. The effect of the participation agreement is to prevent Scottsdale Memorial from looking to a subscriber for amounts in excess of the DRG amount. The result is a direct, not merely incidental, benefit to the subscribers.

*Id.* at 553. While paragraph 5 of the Second Amendment, if carried out, would confer a benefit on adjacent parcel owners, paragraph 6.4 expressly denies any intent to confer third-party beneficiary status on those owners or anyone else.

**¶18** Brock next contends that "[t]he specific contract language—paragraph 5 of the Second Amendment—should be given greater weight

than the general language in paragraph 6.4." *See, e.g., Autonumerics, Inc. v. Bayer Indus., Inc.*, 144 Ariz. 181, 188 (App. 1984) ("Where there is inconsistency in a contract, specific provisions qualify the meaning of general provisions."). But paragraph 6.4 is more specific regarding whether the Second Amendment confers third-party beneficiary rights, as it plainly bars third parties from enforcing the Second Amendment. Paragraph 5, in contrast, only states that Tellurian would use "commercial best efforts to work with other owners to include a circulation plan;" it does not say whether the "other owners" can sue to enforce that promise.

¶19      In any event, we do not construe one contract term in a way that would render another term essentially meaningless. *Aztar Corp. v. U.S. Fire Ins. Co.*, 223 Ariz. 463, 478, ¶ 56 (App. 2010). Construing paragraph 5 to grant Brock and other adjacent landowners third-party beneficiary status would render meaningless not only paragraph 6.4 but also similar provisions in the Development Agreement and Assumption Agreement.

¶20      Lastly, Brock contends that "since paragraph 5 of the Second Amendment added new language to [paragraph] 7.1 of the Development Agreement, that language was retroactively inserted into the Development Agreement itself and obligated Appellee to comply with it through all the agreement iterations thereafter." Again, paragraph 6.4, which appears on the same page as paragraph 5, disclaims any intent to make any "other owners" third-party beneficiaries of the Second Amendment. If Tellurian and the City wanted to grant these owners third-party beneficiary status, they easily could have done so. *See Grubb & Ellis Mgmt. Services, Inc. v. 407417 B.C., L.L.C.*, 213 Ariz. 83, 86, ¶ 12 (App. 2006) ("[W]hen parties bind themselves by a lawful contract the terms of which are clear and unambiguous, a court must give effect to the contract as written."). They did not. For these reasons, we conclude the superior court did not err in dismissing Brock's complaint seeking relief under the Second Amendment.

## III.    Attorneys' Fees on Appeal

¶21      Both sides request their attorneys' fees incurred in this appeal pursuant to A.R.S. § 12-341.01, which permits a discretionary award to the successful party in an action arising out of a contract. This dispute arises out of the Second Amendment, and Tellurian is the successful party on appeal. Tellurian therefore may recover reasonable attorneys' fees and taxable costs incurred in this appeal upon compliance with ARCAP 21.

## CONCLUSION

¶22        We affirm the dismissal of Brock's complaint.



AMY M. WOOD • Clerk of the Court
FILED:     AA