5 P.2d 940

**Elizabeth HAISCH, a single person, on behalf of herself and all others similarly situated, Plaintiff–Appellant,**

v.

**ALLSTATE INSURANCE COMPANY, Defendant–Appellee.**

No. 1 CA–CV 98–0703.

Court of Appeals of Arizona, Division 1, Department B.

June 6, 2000.

Hagens & Berman, P.S. by Steve W. Berman and Sean R. Matt, Seattle, Washington, and Hagens Berman & Mitchell, P.L.L.C. by Steven C. Mitchell and Christopher .A. O'Hara, Phoenix, Attorneys for Plaintiff–Appellant.

Steptoe & Johnson LLP by Floyd P. Bienstock and Bennett Evan Cooper, Phoenix, and Sonnenschein Nath & Rosenthal by Jeffrey Lennard and Mark Hanover, Chicago, Illinois, Attorneys for Defendant–Appellee.

## OPINION

THOMPSON, Presiding Judge.

¶ 1 Elizabeth Haisch (Haisch) appeals from summary judgment for Allstate Insurance Company (Allstate) on Haisch's alternative damages claims for violation of the Arizona Consumer Fraud Act, Ariz.Rev.Stat. Ann. (A.R.S.) §§ 44–1521 through 44–1534 (1994 and Supp.1998); common-law fraud; negligent misrepresentation; and misrepresentation in violation of A.R.S. §§ 20–441 through 20–467 (1990 and Supp.1998). The appeal presents these questions:

(1) Whether Allstate's failure to explain to holders and prospective purchasers of automobile liability policies that optional Med Pay coverage would cover only those medical expenses that insured persons became legally liable to pay constituted

a. a "deceptive act, fraud, false pretense, [or] misrepresentation" within the Arizona Consumer Fraud Act, A.R.S. § 44–1522(A); or

b. a misrepresentation that would support a claim for negligent misrepresentation, common-law fraud, or violation of A.R.S. §§ 20–441 through 20–467;

(2) Whether reliance was an essential element of any of Haisch's claims for relief; and

(3) Assuming reliance was required for any recovery, whether the burden of proof on that issue should shift to Allstate.

We have jurisdiction pursuant to A.R.S. §§ 12–120.21(A)(1) (1992) and 12–2101(B) (1994).

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 At all times material to this litigation Haisch was a member of CIGNA Private Practice Plan of Arizona, a Health Care Service Organization, or "HMO." As a CIGNA member, Haisch was completely covered for charges resulting from health care services listed in her plan. *See* A.R.S. § 20–1072 (1990 and Supp.1998).[1] Haisch was also the insured under an Allstate automobile liability policy that included optional Med Pay cover-

---

1. The pertinent portions of A.R.S. § 20–1072 provide:

    **A.** Every written contract between a health care services organization and a provider shall set forth that if the organization fails to pay for covered health care services as set forth in the enrollee's evidence of coverage or contract the enrollee is not liable to the provider for any amounts owed by the organization and the provider shall not bill or otherwise attempt to collect from the enrollee the amount owed by the organization.

    **B.** If the written contract between the contracting provider and the organization fails to contain the required prohibition stated in subsection A, the enrollee is not liable to the contracting provider for any amounts owed by the organization.

    **C.** No contracting provider or agent, trustee or assignee of the contracting provider may maintain an action at law against an enrollee to collect any amounts owed by the organization for which the enrollee is not liable to the contracting provider under subsection A.

    **D.** Nothing in this section impairs the right of a provider to charge, collect from, attempt to collect from or maintain an action at law against an enrollee for any of the following:

    1. Copayment or coinsurance amounts.

    2. Health care services not covered by the organization, including out of area claims that are not paid by an organization on behalf of an enrollee.

    3. Health care services rendered after the termination of the contract between the health care services organization and the provider, unless the health care services were rendered during confinement in an inpatient facility and the confinement began prior to the date of termination, or unless the provider has assumed post-termination treatment obligations under the contract.

    **E.** Nothing in this section prohibits an enrollee from seeking health care services from a contracting or noncontracting provider and accepting financial responsibility for these services.

age of $5,000.00.[2]

¶ 3 Haisch sustained injuries in an automobile accident in August 1994. She later submitted $6,204.44 in physician and surgical facility bills to Allstate with a request for payment up to her Med Pay coverage limits. Allstate declined to pay her anything in excess of $943.00, representing sums she incurred for physical therapy and other health care services not covered by CIGNA and coinsurance payments that were Haisch's responsibility under her CIGNA coverage. Allstate demurred as to all sums representing bills that CIGNA had paid as Haisch's HMO. Allstate's written explanation stated:

> Our policy provides coverage for expenses "actually incurred" from an auto accident. To "incur" means "to become legally obligated for" by common law. According to A.R.S. § 20–1052, Health Care Service Organizations (HCSO's) are required to provide "basic health care services" to their patients. In addition, A.R.S. § 20–1072, does not allow HCSO's to charge their customers for basic health care services with the exception of copayment amounts or types of services not normally covered under HCSO plans. Our position with regard to this case is that our insured has only received "basic health care services", which have already [been] paid for through HMO premiums, and has not actually incurred a bill other than the copayment amount.

¶ 4 In other litigation, Allstate had previously stated that in contrast to insureds who have health coverage through HMOs, insureds covered by indemnity plans are legally responsible for all health care services they obtain even though they may be contractually entitled to reimbursement from their insurers for a large percentage of the health care fees they are charged. Allstate stated that these health care fees were legally "incurred" by insureds with indemnity coverage, and Allstate's Med Pay provisions therefore entitled them to reimbursement for one hundred percent of those fees up to the Med Pay coverage limit.

¶ 5 It is undisputed that Allstate did not and does not explain its interpretation of its Med Pay provisions to its prospective or current policy holders, either orally or in writing, in advance of the customer's decision to buy or add Med Pay coverage.

¶ 6 At no time before Haisch was deposed in this litigation had she read either her CIGNA HMO policy or the Med Pay provisions of her Allstate automobile liability policy. Haisch did not know that her Med Pay insurance would cover passengers or persons to whom she lent her insured automobile. She was also unaware that Med Pay covered many services that CIGNA did not provide, such as dental work, prescription drugs, glasses, hearing aids, funeral expenses, chiropractic care, services of non-participating providers, and physical therapy.

¶ 7 Haisch testified on deposition that her deceased husband had once told her that if they were ever in an accident they could use Med Pay, and that was why they needed it.

---

2. Allstate's "Automobile Medical Payments Coverage CC" provides in relevant part:

Allstate will pay to or on behalf of an insured person all reasonable expenses actually incurred by an insured person for necessary medical treatment, services or products actually provided to the insured person within one year of the accident. Payments will be made only when bodily injury, sickness, disease, or death is caused by an auto accident. Ambulance, medical, surgical, X-ray, dental, orthopedic and prosthetic devices, professional nursing services, pharmaceuticals, eyeglasses, hearing aids, and funeral service expenses are covered.

. . . .

Insured persons

1. You and any resident relative who sustains bodily injury while in, on, getting into or out of, or when struck by, an auto or trailer. The use of a non-owned auto must be with the owner's permission.

2. Any other person who sustains bodily injury while in, on, getting into or out of

a) your insured auto while being used by you, a resident relative, or any other person with your permission.

b) a non-owned auto if the injury results from your operation or occupancy.

c) a non-owned auto if the injury results from the operation on your behalf by your private chauffeur or domestic servant.

d) a non-owned private passenger auto or trailer if the injury results from the operation or occupancy by a resident relative.

The use of non-owned autos must be with the owner's permission.

Haisch further testified that twice in the past she had talked to Allstate agents about dropping her Med Pay coverage. In the first discussion the agent told her that doing so would not lower her premium appreciably. She decided to keep the coverage because "I'm one of the older group, and I always figured you need as much insurance as you can." In the second discussion a different Allstate agent advised Haisch to keep her Med Pay coverage because she had health insurance through an HMO. She testified she agreed with this advice because she believed that the particular HMO through which she had coverage at that time does not "quite pay for everything, and a lot of times they say no, they don't approve it."

¶ 8 Haisch brought this action against Allstate in February 1996. Her First Amended Complaint alleged that Allstate engages in a systematic practice of unfairly marketing Med Pay coverage, because it fails to disclose to its customers that Med Pay will not cover any medical expenses already covered by the insured's HMO or health insurance.[3] Haisch's complaint also sought relief on behalf of the class of all persons who paid premiums for Allstate Med Pay coverage and "were members of a Health Care Service Organization or otherwise had health insurance in effect" at any time from and after February 16, 1993. The complaint alleged that Allstate's conduct violated the Arizona Consumer Fraud Act and constituted negligent misrepresentation, common-law fraud, and misrepresentation in violation of A.R.S.

§ 20–443 *et seq.* Haisch and the alleged class sought declaratory and injunctive relief, the return of "insurance premiums paid for useless insurance," and punitive damages.

¶ 9 Allstate moved for summary judgment. The trial court ruled for Allstate. The trial court reasoned that Allstate's marketing of Med Pay coverage did not as a matter of law establish a cognizable claim under any of Haisch's theories of recovery.[4]

¶ 10 From formal judgment, Haisch timely appeals.

## DISCUSSION

### I. OMISSION TO EXPLAIN EFFECT OF A.R.S. § 20–1072

¶ 11 Haisch's central contention on appeal proceeds from the uncontroverted proposition that Allstate does not advise prospective purchasers of Med Pay coverage that automobile accident-related expenses for health care that HMOs provide are not covered by Med Pay, while any expenses for health care that HMOs do not provide will be paid to the insured up to the Med Pay policy limit even if a non-HMO health insurer also pays the insured for all or a portion of the same expenses. Haisch contends that Allstate's omission to disclose this information constitutes a "misrepresentation" or "deceptive practice" in violation of A.R.S. § 44–1522(A), and a "misrepresentation" sufficient to support liability for common-law fraud, negligent

3. In the trial court Haisch dropped her initial assertion that Allstate followed a practice of declining Med Pay coverage for expenses covered under a health insurer other than an HMO.

4. The trial court explained:
     This is not a "misrepresentation" which gives rise to liability for negligent misrepresentation, common law misrepresentation, consumer fraud or insurance fraud. First, nothing said to Haisch was false. The contract language is unambiguous and when read with A.R.S. § 20–1072 indicates that Haisch did not incur within the meaning of the insurance contract the medical expenses in question—that is those beyond the $943.00 paid. Failing to advise policy holders about a gap in coverage might raise an issue. Failing to advise policy holders about a lack of "double recovery" does not. Second, there was no reliance upon an interpretation of the contract and statutory

language that would give double recovery. It is uncontested that no Allstate agent or representative made any statement on this issue that was relied upon by Haisch in her decision to purchase or retain her automobile insurance....
     The result in this case would clearly be different if Haisch was not receiving full recovery. See, *Schultz v. Farmers Insurance [Group of Companies,* 167 Ariz. 148, 805 P.2d 381 (1991)], supra. Haisch has been fully compensated for the medical expenses she incurred. The language of A.R.S. § 20–1072 limits the Med Pay Coverage in Allstate's Med Pay automobile coverage much the way a properly drafted non-duplication of medical benefits clause limits double recovery through an automobile insurance policy. *See, Schultz v. Farmers Insurance,* supra.

misrepresentation, and for violation of A.R.S. § 20–443. We disagree on all counts.

¶ 12 Section 44–1522(A) (1994) provides:

> The act, use, or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived, or damaged thereby, is declared to be an unlawful practice.

The term "merchandise" in section 44–1522(A) includes "services." *See Maurer v. Cerkvenik–Anderson Travel, Inc.,* 181 Ariz. 294, 297, 890 P.2d 69, 72 (1994). A private right of action exists for damages caused by a violation of A.R.S. § 44–1522(A). *See id.*

¶ 13 Section 20–443 (1990) provides in pertinent part:

> No person shall make, issue or circulate, or cause to be made, issued or circulated, any estimate, illustration, circular, sales material or statement:
>
> 1. Misrepresenting the terms of any policy issued or to be issued or the benefits or advantages promised....
>
> . . . .
>
> 4. Using any name or title of any policy or class of policies misrepresenting the true nature of such policy.

*See also* A.R.S. § 20–444(A) (prohibiting untrue, deceptive or misleading representations with regard to business of insurance or any person in conduct of insurance business). A private right of action exists for damages caused by a violation of section 20–443. *See Sparks v. Republic Nat'l Life Ins. Co.,* 132 Ariz. 529, 540–41, 647 P.2d 1127, 1138–39 (1982).

¶ 14 To establish actionable fraud, a plaintiff must show that the defendant made a false, material representation that he knew was false or was ignorant of its truth, with the intention that the hearer of the representation act on it in a manner reasonably contemplated, that the hearer was ignorant of the representation's falsity, rightfully relied on the truth of the representation, and sustained consequent and proximate damage. *See Echols v. Beauty Built Homes, Inc.,* 132 Ariz. 498, 500, 647 P.2d 629, 631 (1982); *Carrel v. Lux,* 101 Ariz. 430, 434, 420 P.2d 564, 568 (1966). Where the defendant has a legal or equitable obligation to reveal material information, his failure to do so is equivalent to a misrepresentation and may therefore support a claim of actionable fraud where the remaining elements of that tort are proved. *See Madisons Chevrolet, Inc. v. Donald,* 109 Ariz. 100, 102–103, 505 P.2d 1039, 1041–42 (1973); *Schock v. Jacka,* 105 Ariz. 131, 133, 460 P.2d 185, 187 (1969).

¶ 15 Arizona has recognized the tort of negligent misrepresentation as defined by Restatement (Second) of Torts § 552(1) (1977):

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*See St. Joseph's Hospital and Med. Ctr. v. Reserve Life Ins. Co.,* 154 Ariz. 307, 312, 742 P.2d 808, 813 (1987); *McAlister v. Citibank (Arizona), a Subsidiary of Citicorp,* 171 Ariz. 207, 215, 829 P.2d 1253, 1261 (1992).

¶ 16 The circumstances of this case support none of Haisch's theories of liability against Allstate. The governing legal principles underpinning each of these theories share a common theme—in one way or another, the representation, omission, or concealment on which liability is predicated must be logically related to the transaction in which it occurs and rationally significant to the parties in view of the nature and circumstances of the transaction. Thus, a claim for common-law fraud or consumer fraud under A.R.S. § 44–1522(A) must be based on a misrepresentation, omission, or concealment that is "material." A misrepresentation in

violation of A.R.S. § 20–443 is one that concerns the "terms" of a policy, its "benefits" or "advantages," or its "true nature." And the "false information" on which a claim for negligent misrepresentation is based must be of the kind that is supplied "for the guidance of others in their business transactions."

¶ 17 Haisch seeks to impose liability on Allstate for its failure to disclose to potential Med Pay insureds the legal effect that A.R.S. § 20–1072 would have on the ability of insured HMO members to collect sums from Allstate over and above their actual out-of-pocket health care expenses caused by covered auto accidents. That Allstate's omission does not make it liable is unmistakably apparent from the nature of the transaction in which the purported "concealment" or "misrepresentation" took place.

¶ 18 Consumers do not purchase insurance coverage for commercial advantage. They do so to obtain protection from calamity. *See Noble v. National American Life Ins. Co.*, 128 Ariz. 188, 189, 624 P.2d 866, 867 (1981); *Rawlings v. Apodaca*, 151 Ariz. 149, 154, 726 P.2d 565, 570 (1986); *Enyart v. Transamerica Ins. Co.*, 195 Ariz. 71, 74, 985 P.2d 556, 559 (1998). It is beyond dispute on this record that Haisch acted with the latter motivation in buying and continuing to hold Med Pay coverage under her Allstate automobile liability policy. Against that background, the proposition that by failing to advise Haisch or other prospective Med Pay insureds that she would be ineligible for bonus "reimbursement"[5] of accident-related health care expenses for which the HMO was responsible, Allstate (a) commits a "material" misrepresentation or concealment, or (b) misstates the "terms," "benefits," "advantages," or "true nature" of the policy, or (c) conveys "false information" to its insured for his or her guidance in the insurance transaction, is without merit.

¶ 19 We admit to some puzzlement about why any insurer would write Med Pay coverage that would permit such bonus "reimbursements" under any circumstances. The fact that Med Pay insureds with traditional indemnity health care coverage may receive such windfalls under Allstate's coverage, however, leaves undisturbed our conclusion that Allstate commits neither actionable fraud, negligent misrepresentation, consumer fraud, nor insurance fraud in failing to advise HMO members of their different status under A.R.S. § 20–1072.

¶ 20 Haisch contends that Allstate's failure to include a coordination of benefits clause in its Med Pay coverage also renders its Med Pay coverage deceptive and misleading. Haisch argues: "In fact, under Arizona law, the failure to include a coordination of benefits clause in the policy means that the plaintiff did actually 'incur' the very same expenses which were covered under her HMO policy and which Allstate denied. Such was the holding of this Court in *Nahom v. Blue Cross & Blue Shield*, 180 Ariz. 548, 885 P.2d 1113 (1994)."

¶ 21 To the extent we understand Haisch's argument, we disagree with it. Haisch's assertion quoted immediately above appears directed toward supporting the proposition that Allstate should have paid Haisch under its Med Pay coverage the sums for which her HMO was responsible. We know from the record, however, and Haisch acknowledges that she brought no breach of contract claim against Allstate in this action.[6] We therefore do not address Haisch's assertion except to the extent it tends logically to support her contention that the absence of a coordination of benefits clause from Allstate's Med Pay provisions renders those provisions misleading and deceptive.

¶ 22 Ultimately, however, no such logical tendency is apparent to us. Haisch's expla-

---

**5.** Indeed, we disagree with the dissent's assertion that such a bonus, consisting of payment to Haisch for charges that Haisch was never obligated to pay herself, was reasonably expected by the insurer.

**6.** For this reason, we do not address the extensive arguments Haisch makes in her reply brief in support of the view that the requirement that

automobile accident-related health care expenses be "actually incurred" should be disregarded because it is contrary to the reasonable expectations of average purchasers of insurance. *See generally Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 389–94, 682 P.2d 388, 394–99 (1984).

nation of her contention is never more specific than this:

> In sum, under *Nahom v. Blue Cross,* as neither the Allstate policy nor Ms. Haisch's Cigna HMO policy contained a coordination of benefits clause, her medical expenses were "actually incurred" by her, despite the fact that they were ultimately paid by her HMO. As such, Allstate's main position in this case is both technically and legally incorrect. This serves to highlight the deceptive and misleading nature of Allstate's Med Pay policy, as well as Allstate's hidden, hyper-technical interpretation of the same.

Haisch repeats the concluding two sentences of the quoted passage verbatim in her reply brief. She makes no further attempt to provide analytical support for the proposition that the sentences assert.

¶ 23 We will not attempt to divine the analysis that Haisch has omitted. We agree with Allstate's refutation of Haisch's subsidiary thesis that under *Nahom* she was personally liable on the health care charges for which her HMO was responsible.[7]

¶ 24 The dissent argues that it was deceptive for Allstate to sell insurance without giving notice that it might "rely on an obscure statute to severely limit coverage...." That statute, section 20–1072, is dispositive of the issue whether Haisch "incurred" covered expenses. We do not know how to determine when a statute, decidedly on point, is so "obscure" as to be ineffectual.

¶ 25 Finally, we note the dissent's argument that the insurance was expensive and superfluous, resulting in a windfall to Allstate that should be diverted to Haisch. We do not know from the record whether the insurance at issue here was expensive or superfluous, and we will not presume either. It was not reasonable for Haisch to have expected that Allstate would "reimburse" her for charges she never had to pay in the first place, and it was not "unlawful" for Allstate to fail to advise Haisch that this insurance policy would not operate in such a fashion.

## II. RELIANCE

¶ 26 Because our resolution of the first issue is dispositive, we need not discuss whether a claim for damages for consumer fraud requires proof of the plaintiff's reliance on the alleged misrepresentation, omission, or concealment.

## CONCLUSION

¶ 27 The trial court correctly granted summary judgment for Allstate on Haisch's complaint. Therefore, we affirm the judgment.

CONCURRING: WILLIAM F. GARBARINO, Judge.

SULT, Judge, dissenting.

¶ 28 I disagree that Mrs. Haisch has not established at least a *prima facie* claim for consumer fraud. A.R.S. § 44–1522(A), in pertinent part, makes unlawful the "use ... by any person ... of any ... omission of any material fact with intent that others rely upon such ... omission, in connection with the sale ... of any merchandise...." Reduced to its essence, this is a case where an insurance company repeatedly sold a consumer insurance coverage that the consumer may well have chosen not to purchase had the company disclosed it intended to rely on an obscure statute to severely limit coverage

---

7. Allstate argues:

   [Haisch] ignores both the purpose of [coordination of benefits] clauses and the effect of the term "actually incurred" in the Med Pay coverage clause. Coordination of benefits clauses are necessary where, in the first instance, two or more policies extend coverage to the expense. A coordination of benefits clause is irrelevant here because Allstate's Med Pay provision does not cover any medical expenses in the first instance *unless* the expenses are "actually incurred." The Med Pay coverage provision does not, for example, cover "all medical expenses arising out of auto accidents," but rather only reasonable expenses that are "actually incurred" by the insured. Thus, the initial grant of coverage was itself limited to expenses for which the insured could be legally liable. As the Superior Court recognized, the "actually incurred" term, in conjunction with the HCSO statute, eliminated double recovery even without a coordination of benefits clause. By contrast, in *Nahom,* the patient incurred hospital expenses because, although the expenses had been paid by another source, the patient remained liable for them. 180 Ariz. at 553–55, 885 P.2d at 1118–20.

if the consumer also happened to purchase the wrong kind of health insurance.

¶ 29 It is undisputed that Allstate never told Mrs. Haisch what the consequences to her medical payments coverage would be if she enrolled in an HMO rather than purchase indemnity health insurance. As she testified,

> I paid for the [Med Pay] benefits all along. I did not know-I was not aware that if my medical payments would be paid by . . . an HMO, that I could not get anything from-you know, it would not be reimbursed through Allstate.
>
> . . . .
>
> I still say that I've been paying premiums all this time for that and nobody ever told me that if I had any kind of medical coverage, Allstate would never, would never pay for it. They should have told me that up front. . . .

I agree that she should have been told up front. And I contend that Allstate's failure to do so was an omission of material fact in the marketing of its automobile policy that constituted an unlawful act under section 44–1522(A).

¶ 30 The majority is correct when it observes that consumers purchase insurance coverage to obtain protection from calamity. That is precisely what Mrs. Haisch intended doing here, in accordance with the sound advice her deceased husband had given her. Yet the majority refuses to validate this perfectly reasonable approach to the purchase of insurance when it fails to require Allstate to disgorge the premium Mrs. Haisch unwittingly paid to Allstate for a level of protection significantly less than she reasonably thought she was getting.

¶ 31 The majority justifies its position by arguing that Allstate was not obligated to disclose to Mrs. Haisch that she would be ineligible for what the majority calls a "bonus reimbursement" if she enrolled in an HMO.

See supra ¶ 18. This misses the point and mischaracterizes the issue. What Allstate is charged with knowing is that Mrs. Haisch and all like her purchase medical payments coverage with the expectation that it will pay in the event of a covered injury. If there are to be any exceptions to this reasonable expectation, Allstate is bound to disclose them. This is particularly true when the expected coverage can be defeated by the fortuitous purchase of HMO health coverage rather than indemnity health coverage. Only when full disclosure is made can the Mrs. Haisches of the world make an informed decision whether to still purchase the coverage or to decline to purchase, recognizing that by paying the premium asked, they would be getting less coverage than others who pay the same premium.

¶ 32 The "bonus reimbursement" pejoration of the majority reflects both the trial court's and the majority's apparent impression that Mrs. Haisch is complaining because she has been deprived of a "double recovery" and that such a concept is anathematic in our jurisprudence. This argument might have some relevance if Mrs. Haisch were seeking a declaration of coverage, but she is not.[8] What she is seeking is return of the unfair premium she paid because of Allstate's unlawful failure to disclose. But even if "double recovery" were involved, such a concept is not unknown in our jurisprudence. Witness the collateral source rule which, in the event of a windfall, assigns the windfall to an accident victim over a tortfeasor. See Michael v. Cole, 122 Ariz. 450, 452, 595 P.2d 995, 997 (1979). This is consistent with the law's effort, where possible, to choose the blameless over the culpable.

¶ 33 In this case, however, the majority reverses this approach. Here, we have a sophisticated insurance company extracting from an uninformed consumer a premium purportedly purchasing full medical payments coverage, and, in fact, actually pur-

---

8. If this were a coverage issue, Allstate would have a difficult time defeating coverage. See Gordinier v. Aetna Casualty & Surety Co., 154 Ariz. 266, 272–73, 742 P.2d 277, 283–84 (1987) (even where an insurance contract term is unambiguous to the court, if it cannot be understood by the reasonably intelligent consumer, the term will be interpreted in light of the reasonable expectations of the average insured). Mrs. Haisch's expectation of full coverage is certainly reasonable, and this policy's taking away of the coverage is certainly not apparent to ordinary consumers who might check on their rights.

chasing full coverage if the consumer is fortunate enough not to enroll in an HMO. I presume that the premium for this coverage is calculated based on the company's expectation that it will have to pay full benefits if its insured is injured. Such a presumption is logical because the company cannot control what type of health insurance will be purchased by its insureds, and the company must set its rates on the assumption that all of its insureds will have either indemnity type health insurance or no insurance at all. Thus, when an insured is injured but happens to be enrolled in an HMO, a windfall situation arises. Here, the majority assigns the windfall to Allstate, which gets to pocket what in effect is an excessive premium that was obtained by unlawful silence. What the majority does not explain is why Allstate should benefit in this way.

¶ 34 I would find that Mrs. Haisch has established a genuine issue of material fact whether Allstate is guilty of consumer fraud and remand for trial on that issue.