NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

# IN THE
# ARIZONA COURT OF APPEALS
## DIVISION ONE

DIGNITY HEALTH,
*Plaintiff/Appellant*,

*v.*

FARMERS INSURANCE COMPANY OF ARIZONA,
*Defendant/Appellee*.

No. 1 CA-CV 18-0292
FILED 4-4-2019

Appeal from the Superior Court in Maricopa County
No. CV2017-002466
The Honorable Kerstin G. LeMaire, Judge

**VACATED AND REMANDED**

COUNSEL

Gammage & Burnham PLC, Phoenix
By Richard B. Burnham, Cameron C. Artigue, Christopher L. Hering
*Counsel for Plaintiff/Appellant*

Jardine, Baker, Hickman & Houston, P.L.L.C., Phoenix
By Bradley R. Jardine
*Counsel for Defendant/Appellee*

---

## MEMORANDUM DECISION

Chief Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Kent E. Cattani and Judge James P. Beene joined.

---

**T H U M M A**, Chief Judge:

¶1 The dispositive issue in this appeal is whether payments under optional medical payments coverage included in an automobile insurance policy (which the parties call "medpay coverage") is "health insurance" and, therefore, not subject to a health care provider lien under Arizona Revised Statutes section 33-931. As discussed below, because this medpay coverage is not health insurance, those payments are subject to the health care provider lien. Accordingly, the grant of defendant Farmers Insurance Company of Arizona's motion to dismiss is vacated and this matter is remanded.

### FACTS[1] AND PROCEDURAL HISTORY

¶2 Farmers issued an automobile insurance policy to Bethanie Elliott that included optional medpay coverage. Plaintiff Dignity Health, doing business as Mercy Gilbert Medical Center, provided Elliott medical services after she was injured in a car accident. The usual and customary charges for those services exceeded $160,000. Dignity recorded and perfected a health care provider lien for more than $140,000 to secure payment for those medical services. *See* Ariz. Rev. Stat. (A.R.S.) § 33-931 (2019).[2] Notwithstanding that lien, Farmers directly paid Elliott $99,000 in medpay benefits under her automobile insurance policy.

¶3 Dignity timely filed this action to enforce its lien, claiming Farmers' direct payment to Elliott violated the lien. Farmers moved to dismiss for failure to state a claim, arguing its payment was not subject to the lien. After briefing and oral argument, the superior court granted

---

[1] In reviewing the grant of a motion to dismiss, this court assumes the truth of all well-pleaded facts alleged in the complaint. *Fid. Sec. Life Ins. Co. v. State*, 191 Ariz. 222, 224 ¶ 4 (1998).

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

Farmers' motion, stating "the court agrees with the reasoning as set forth by [Farmers] in its motion and reply." Dignity timely appealed from the resulting final judgment. *See* Ariz. R. Civ. P. 54(c). This court has jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

¶4   Under A.R.S. § 33-931, a health care provider may obtain a lien to secure payment of customary charges for services provided to an injured person. The statute, however, provides exceptions to the scope of such a lien:

> A lien pursuant to this section extends to all claims of liability or indemnity, ***except health insurance and underinsured and uninsured motorist coverage as defined in § 20-259.01,*** for damages accruing to the person to whom the services are rendered . . . on account of the injuries that gave rise to the claims and that required the services.

A.R.S. § 33-931(A) (emphasis added). Thus, if Farmers' payment of medpay benefits to Elliott was for health insurance benefits, it was exempt from Dignity's lien. But if the payment to Elliott was not a health insurance benefit, the payment violated the lien. Although aspects of medpay coverage have been the subject of litigation in Arizona for decades, *e.g., Sahadi v. Mid-Century Ins. Co.*, 132 Ariz. 422, 423 (App. 1982), the specific issue presented here is one of first impression.

¶5   Dignity claims the superior court misinterpreted A.R.S. § 33-931. In seeking dismissal for failure to state a claim based on an exception to the lien statute, Farmers had the burden to show Dignity's claim failed as a matter of law. *See* Ariz. R. Civ. P. 12(b)(6); *cf. Troutman v. Valley Nat'l Bank of Ariz.*, 170 Ariz. 513, 517 (App. 1992) (stating burden of showing applicability of statutory exception is "on the party asserting that exception"). This court reviews de novo both the interpretation of a statute and the grant of a Rule 12(b)(6) motion to dismiss. *Coleman v. City of Mesa*, 230 Ariz. 352, 355 ¶ 7 (2012); *Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.*, 177 Ariz. 526, 529 (1994).

¶6          "[T]he best and most reliable index of a statute's meaning is its language and, when the language is clear and unequivocal, it is determinative of the statute's construction." *State v. Hansen*, 215 Ariz. 287, 289 ¶ 7 (2007) (citation omitted). "In giving effect to every word or phrase, the court must assign to the language its 'usual and commonly understood meaning unless the legislature clearly intended a different meaning.'" *Bilke v. State*, 206 Ariz. 462, 464-65 ¶ 11 (2003) (citation omitted). Only where statutory text is ambiguous and susceptible to more than one plausible interpretation does the court use tools of statutory construction, looking to "the statute's context; its language, subject matter, and historical background; its effects and consequences; and its spirit and purpose." *Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 268 (1994).

## I.     As Used In A.R.S. § 33-931, "Motorist Coverage As Defined In § 20-259.01" Does Not Modify "Health Insurance."

¶7          Farmers argues Section 33-931 should be read so that "motorist coverage as defined in § 20-259.01" modifies not only the words "underinsured" and "uninsured," but also "health insurance." Arguing the statute "is clear and unambiguous," Farmers asserts Section 33-931 excepts from the lien "health insurance . . . motorist coverage as defined in § 20-259.01," which it claims means the payment to Elliott is not subject to the lien, because medpay is "the only term that meets the definition of 'health insurance motorist coverage.'" Dignity argues that Farmers failed to raise this argument in the superior court, meaning it was waived. In the superior court, however, Farmers did argue a Section 33-931 lien is limited by Section 20-259.01 and the two statutes "must be interpreted together in a harmonious and consistent manner." Accordingly, Farmers at least minimally raised with the superior court this argument that it now presses on appeal.

¶8          Contrary to Farmers' assertion, the text of Section 33-931 excludes from the scope of a health care provider's lien: (1) health insurance (without reference to § 20-259.01); (2) uninsured motorist coverage as defined in § 20-259.01 and (3) underinsured motorist coverage as defined in § 20-259.01. Moreover, to the extent any ambiguity exists, the changes to Section 33-931 over the years negate Farmers' argument and compel a reading excepting health insurance without reference to Section 20-259.01. *See Carrow Co. v. Lusby*, 167 Ariz. 18, 20 (1990) ("Legislative intent often can be discovered by examining the development of a particular statute.").

¶9            Until 1988, Section 33-931 authorized a health care provider lien, without any exceptions, on "any and all claims for damages accruing to the person to whom hospital service is rendered." *Gartin v. St. Joseph's Hosp. & Med. Ctr.*, 156 Ariz. 32, 35 (App. 1988) (quoting A.R.S. § 33-931(A) (1988)). In 1988, the Legislature amended Section 33-931 to except "health insurance" from the coverage of such a lien. *See* 1988 Ariz. Sess. Laws, ch. 298, § 2 (2d Reg. Sess.). It was not until 2004 – 16 years later – that Section 33-931 was amended to also except "underinsured and uninsured motorist coverage as defined in § 20-259.01." 2004 Ariz. Sess. Laws, ch. 154, § 1 (2d Reg. Sess.).

¶10           Contrary to Farmers' argument, there is no suggestion that the 2004 amendment to Section 33-931, which first added the reference to Section 20-259.01, was designed to modify the "health insurance" exemption added in 1988. Indeed, Legislative materials make clear the 2004 amendment was made solely to exempt "underinsured and uninsured motorist coverage as defined in § 20-259.01," **not** to alter the "health insurance" exemption in Section 33-931. *See* House Bill Summary, H.B. 2681 (Apr. 20, 2004) (explaining the 2004 amendment "[p]rohibits private and county health care institutions from recovering an injured person's uninsured or underinsured motorist coverage when enforcing a lien to recover hospital charges for medical care"); Senate Fact Sheet, H.B. 2681 (Mar. 30, 2004) (similar). This history of Section 33-931 undercuts Farmers' argument that the statute should be read to exempt from a lien "[h]ealth insurance motorist coverage as defined in § 20-259.01."

¶11           Apart from this history, the term "health insurance" is not defined in Section 20-259.01. Thus, it would be illogical to read Section 33-931 to mean "health insurance as defined in § 20-259.01." Section 20-259.01 is entitled "Motor vehicle liability policy; uninsured optional; underinsured optional; subrogation; medical payments liens; definitions." The section contains three definitions: "[u]ninsured motor vehicles;" "[u]ninsured motorist coverage" and "[u]nderinsured motorist coverage." A.R.S. § 20-259.01(D), (E) & (G). The fact that "health insurance" is not used in, much less defined in, Section 20-259.01 negates any suggestion that Section 33-931 should be read such that "motorist coverage as defined in § 20-259.01" modifies the phrase "health insurance." *See Callen v. Rogers*, 216 Ariz. 499, 507 (App. 2007) ("[W]hen the legislature has specifically included a term in some places within a statute and excluded it in other places, courts will not read that term into the sections from which it was excluded.") (citation omitted).

¶12 Had the Legislature wanted to exempt "[h]ealth insurance motorist coverage as defined in § 20-259.01" from a healthcare provider lien, it could have done so, either by amending Section 33-931 or by defining "health insurance" in Section 20-259.01. It did neither. Based on this history of Section 33-931, and the text used (and not used) in that statute and in Section 20-259.01, "motorist coverage as defined in § 20-259.01," as used in Section 33-931, does not modify "health insurance." Accordingly, Farmers' argument to the contrary fails.

## II. As Used In A.R.S. § 33-931, "Health Insurance" Does Not Include Medpay Coverage.

¶13 Farmers argued before the superior court that "'health insurance' from A.R.S. § 20-259.01 is synonymous with terms such as 'medpay,'" meaning "health insurance" as used in Section 33-931 should be read to include medpay. Dignity argues Farmers failed to raise this argument on appeal, which it claims should be treated as a confession of error. Because Farmers failed to press this argument on appeal, arguing instead that medpay is "health insurance motorist coverage," it has been waived. *See, e.g., Van Loan v. Van Loan*, 116 Ariz. 272, 274 (1977) ("[F]ailure to raise an issue either at the trial level or in briefs on appeal constitutes a waiver of the issue."). Even absent waiver, Farmers' argument would fail.

¶14 An argument that "health insurance" (a phrase that does not appear in Section 20-259.01) is the same as medpay would run counter to the directive that different statutory terms or phrases are not to be treated as synonymous unless the context permits no other meaning. *See P.F. West, Inc. v. Superior Court*, 139 Ariz. 31, 34 (App. 1984). Although not defined in Sections 33-931 or 20-259.01, the A.R.S. Insurance Title (Title 20) defines "health insurance" in the context of a "[p]remium tax credit for health insurance certificates submitted by qualified persons," A.R.S. § 20-224.05(H)(3), to mean a "a licensed health care plan or arrangement that pays for or furnishes medical or health care services and that is issued by a health care insurer." This statute directs that "[h]ealth insurance does not include limited benefit coverage," *id.*, defined as "an insurance policy that is designed, advertised and marketed to supplement major medical insurance and that includes accident only" and other types of coverage, A.R.S. § 20-1137(B). This definition would exclude from health insurance the medpay at issue here. And although this definition is limited to the premium tax credit context, Farmers has not shown that the Legislature defined "health insurance" to mean two irreconcilably different things depending upon whether the phrase was used in Section 33-931 or Section 20-224.05. *Cf. Wyatt v. Wehmueller*, 167 Ariz. 281, 284 (1991) ("A court also

should interpret two sections of the same statute consistently, especially when they use identical language.").

¶15        A statute authorizing a different type of lien also undercuts the thought that "health insurance" and medpay coverage mean the same thing. A qualified insurer providing specified medpay coverage benefits ("medical payments coverage of a motor vehicle insurance policy") is authorized to obtain an insurer's lien for any medpay coverage payment exceeding $5,000 "that is paid to or on behalf of that insured." A.R.S. § 20-259.01(J). Farmers did not obtain such a lien and this statute is not applicable to the health care provider lien recorded and perfected by Dignity. This insurer's lien statute, however, is evidence that the Legislature treats "health insurance" and medpay coverage as two different things. A similar distinction comes from the one other reference to "[m]edical payments coverage" in Title 20 as being one of seven types of "basic coverage" within motor vehicle insurance policies subject to certain renewal limitations. *See* A.R.S. § 20-1631(K)(5).

¶16        Apart from these statutory differences, this court has recognized the difference between health insurance and medpay coverage, albeit in a different context. In *Haisch v. Allstate Insurance Co.*, the plaintiff had health insurance coverage for all "charges resulting from health care services listed in her plan" and had an "automobile liability policy that included optional Med Pay coverage." 197 Ariz. 606, 607 ¶ 2 (App. 2000). After the plaintiff was treated for injuries sustained in a car accident, her automobile insurer refused to pay medpay benefits for any treatment covered by health insurance. *Id.* at 608 ¶ 3. The plaintiff sued her automobile insurer, arguing it "engage[d] in a systematic practice of unfairly marketing Med Pay coverage, because it fails to disclose to its customers that Med Pay will not cover any medical expenses already covered by the insured's . . . health insurance." *Id.* at 609 ¶ 8. Although rejecting the plaintiff's claims, *id.* at 612 ¶ 27, *Haisch* repeatedly acknowledged the difference between health insurance and medpay coverage and that the two phrases are not synonymous.

¶17        Had the Legislature wanted to exempt "medical payments coverage" from the scope of a Section 33-931 health care provider lien, it could have done so. It has not done so, and that has meaning. *Padilla v. Indus. Comm'n*, 113 Ariz. 104, 106 (1976) ("[W]hat the Legislature means, it will say."). The exclusion of "health insurance" for a Section 33-931 lien does not also exclude medpay coverage. For these reasons, even absent waiver, Farmers has not shown that its medpay coverage payment was included in the "health insurance" exception to Dignity's health care

provider lien under Section 33-931. Accordingly, the superior court erred in dismissing Dignity's complaint.[3]

**¶18**      Dignity requests an award of attorneys' fees incurred both on appeal and in the superior court proceedings pursuant to A.R.S. § 33-934. In the exercise of the court's discretion, Dignity is awarded an amount of reasonable attorneys' fees incurred on appeal, as well as its taxable costs on appeal, contingent upon its compliance with Ariz. R. Civ. App. P. 21. This court leaves to the superior court's discretion any award of attorneys' fees resulting from proceedings before that court.

## CONCLUSION

**¶19**      The dismissal of Dignity's complaint is vacated, and this matter is remanded for further proceedings consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED: AA

---

[3] Given this conclusion, the court need not address Dignity's arguments based on the classifications in Arizona's insurance code.