THUMMA, Chief Judge:
*745 ¶1 The dispositive issue in this appeal is whether payments under optional medical payments coverage in an automobile insurance policy (what the parties call "medpay coverage") are "health insurance" and, therefore, not subject to a health care provider lien. As discussed below, because medpay coverage is not health insurance for purposes of the lien statute, those payments are subject to the health care provider lien. Accordingly, the grant of defendant Farmers Insurance Company of Arizona's motion to dismiss is vacated and this matter is remanded.
FACTS[1] AND PROCEDURAL HISTORY
¶2 Farmers issued an automobile insurance policy to Bethanie Elliott that included optional medpay coverage. Plaintiff Dignity Health, doing business as Mercy Gilbert Medical Center, provided Elliott medical services after she was injured in a car accident. The usual and customary charges for those services exceeded $ 160,000. Dignity perfected and recorded a health care provider lien for more than $ 140,000 to secure payment for those services. See Ariz. Rev. Stat. (A.R.S.) § 33-931 (2019).[2] Notwithstanding that lien, Farmers directly paid Elliott $ 99,000 in medpay benefits under her automobile insurance policy.
¶3 Dignity timely filed this lien enforcement action, claiming Farmers' payment to Elliott violated the lien. Farmers successfully moved to dismiss for failure to state a claim, arguing its payment was not subject to the lien. Dignity timely appealed from the resulting final judgment. See Ariz. R. Civ. P. 54(c). This court has jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and - 2101(A)(1).
DISCUSSION
¶4 Under A.R.S. § 33-931, a health care provider may obtain a lien to secure payment of customary charges for services provided to an injured person, with certain express exceptions to the scope of such a lien:
A lien pursuant to this section extends to all claims of liability or indemnity, except health insurance and underinsured and uninsured motorist coverage as defined in § 20-259.01 , for damages accruing to the person to whom the services are rendered ... on account of the injuries that gave rise to the claims and that required the services.
A.R.S. § 33-931(A) (emphasis added). Thus, if Farmers' payment of medpay benefits to Elliott was a health insurance benefit, it was exempt from Dignity's lien. But if the payment was not a health insurance benefit, it violated the lien.
¶5 Determining whether medpay is health insurance is complicated by the record and arguments on appeal. The insurance policy containing the medpay coverage is not included in the record. Moreover, the parties cite no statutory definition of "health insurance" or "medpay coverage," and this court has found no such definitions applicable to Section 33-931(A). Although aspects of medpay coverage have been the subject of litigation in Arizona for decades, e.g. , Sahadi v. Mid-Century Ins. Co. , 132 Ariz. 422, 423, 646 P.2d 307, 308 (App. 1982), the issue here is one of first impression.
*746 ¶6 In moving to dismiss based on an exception to the lien statute, Farmers had the burden to show Dignity's lien enforcement claim failed as a matter of law. See Ariz. R. Civ. P. 12(b)(6) ; cf. Troutman v. Valley Nat'l Bank of Ariz. , 170 Ariz. 513, 517, 826 P.2d 810, 814 (App. 1992) (stating burden to show applicability of statutory exception is "on the party asserting that exception"). This court reviews de novo both the interpretation of a statute and the grant of a Rule 12(b)(6) motion to dismiss. Coleman v. City of Mesa , 230 Ariz. 352, 355 ¶ 7, 284 P.3d 863, 866 (2012) ; Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co. , 177 Ariz. 526, 529, 869 P.2d 500, 503 (1994).
¶7 "[T]he best and most reliable index of a statute's meaning is its language and, when the language is clear and unequivocal, it is determinative of the statute's construction." State v. Hansen , 215 Ariz. 287, 289 ¶ 7, 160 P.3d 166, 168 (2007) (citation omitted). "In giving effect to every word or phrase, the court must assign to the language its 'usual and commonly understood meaning unless the legislature clearly intended a different meaning.' " Bilke v. State , 206 Ariz. 462, 464-65 ¶ 11, 80 P.3d 269, 271-72 (2003) (citation omitted). Only where statutory text is ambiguous and susceptible to more than one plausible interpretation does the court use tools of statutory construction, looking to "the statute's context; its language, subject matter, and historical background; its effects and consequences; and its spirit and purpose." Hayes v. Cont'l Ins. Co. , 178 Ariz. 264, 268, 872 P.2d 668, 672 (1994).
I. As Used In A.R.S. § 33-931, "Motorist Coverage As Defined In § 20-259.01" Does Not Modify "Health Insurance."
¶8 Farmers argues Section 33-931 should be read so that "motorist coverage as defined in § 20-259.01" modifies not only the words "underinsured" and "uninsured," but also "health insurance." Arguing the statute "is clear and unambiguous," Farmers asserts Section 33-931 excepts from the lien "health insurance ... motorist coverage as defined in § 20-259.01." This, Farmers asserts, means the payment to Elliott is not subject to the lien, because medpay is "the only term that meets the definition of 'health insurance motorist coverage.' "
¶9 Contrary to Farmers' assertion, the text of Section 33-931 excludes from the scope of a health care provider's lien: (1) health insurance (without reference to § 20-259.01); (2) uninsured motorist coverage as defined in § 20-259.01 and (3) underinsured motorist coverage as defined in § 20-259.01. To the extent any ambiguity exists, changes to Section 33-931 over the years refute Farmers' argument and compel a reading of Section 33-931 excepting health insurance without reference to Section 20-259.01. See Carrow Co. v. Lusby , 167 Ariz. 18, 20, 804 P.2d 747, 749 (1990) ("Legislative intent often can be discovered by examining the development of a particular statute.").
¶10 Until 1988, Section 33-931 authorized a health care provider lien on "any and all claims for damages accruing to the person to whom hospital service is rendered," without any exceptions. A.R.S. § 33-931(A) (1988). In 1988, the Legislature amended Section 33-931 to except health insurance from the coverage of such a lien. See 1988 Ariz. Sess. Laws, ch. 298, § 2 (2d Reg. Sess.). It was not until 2004 - 16 years later - that Section 33-931 was amended to also except "underinsured and uninsured motorist coverage as defined in § 20-259.01." 2004 Ariz. Sess. Laws, ch. 154, § 1 (2d Reg. Sess.).
¶11 Contrary to Farmers' argument, there is no suggestion that the 2004 amendment to Section 33-931, which first added the reference to Section 20-259.01, was designed to modify the health insurance exemption added in 1988. Indeed, Legislative materials show the 2004 amendment was made solely to exempt "underinsured and uninsured motorist coverage as defined in § 20-259.01," not to alter the health insurance exemption in Section 33-931. See House Bill Summary, H.B. 2681 (Apr. 20, 2004) (stating 2004 amendment prohibits certain "health care institutions from recovering an injured person's uninsured or underinsured motorist coverage when enforcing a lien to recover hospital charges for medical care"); Senate Fact Sheet, H.B. 2681 (Mar. 30, 2004) (similar). This history of Section 33-931 undercuts Farmers' argument that the statute should *747 be read to exempt from a lien "[h]ealth insurance motorist coverage as defined in § 20-259.01."
¶12 Apart from this history, the term "health insurance" is not defined in Section 20-259.01. Thus, it would be illogical to read Section 33-931 to mean "health insurance as defined in § 20-259.01." Section 20-259.01 is titled "Motor vehicle liability policy; uninsured optional; underinsured optional; subrogation; medical payments liens; definitions." The section contains three definitions: "[u]ninsured motor vehicles;" "[u]ninsured motorist coverage" and "[u]nderinsured motorist coverage." A.R.S. § 20-259.01(D), (E) & (G). The fact that "health insurance" is not used, much less defined, in Section 20-259.01 negates any suggestion that Section 33-931 should be read such that "motorist coverage as defined in § 20-259.01" modifies the phrase "health insurance." See Callen v. Rogers , 216 Ariz. 499, 507, 168 P.3d 907, 915 (App. 2007) ("[W]hen the legislature has specifically included a term in some places within a statute and excluded it in other places, courts will not read that term into the sections from which it was excluded.") (citation omitted).
¶13 Had the Legislature wanted to exempt "[h]ealth insurance motorist coverage as defined in § 20-259.01" from a healthcare provider lien, it could have done so, either by amending Section 33-931 or by defining "health insurance" in Section 20-259.01. It did neither. Based on this history of Section 33-931, and the text the Legislature chose to use (and not use) in that statute and in Section 20-259.01, "motorist coverage as defined in § 20-259.01," as used in Section 33-931, does not modify "health insurance."
II. As Used In A.R.S. § 33-931, "Health Insurance" Does Not Include Medpay Coverage.
¶14 Farmers argued before the superior court that " 'health insurance' from A.R.S. § 20-259.01 is synonymous with terms such as 'medpay,' " meaning "health insurance" as used in Section 33-931 should be read to include medpay. Dignity argues Farmers failed to raise this argument on appeal, which it claims should be treated as a confession of error. Farmers did not raise this argument on appeal, arguing instead that medpay is "health insurance motorist coverage," meaning it is waived. See, e.g., Van Loan v. Van Loan , 116 Ariz. 272, 274, 569 P.2d 214, 216 (1977). Even absent waiver, Farmers' argument would fail.
¶15 An argument that "health insurance" (a phrase not used in Section 20-259.01 ) is the same as medpay coverage would run counter to the directive that different statutory terms or phrases are not to be treated as synonymous unless context permits no other alternative. See P.F. West, Inc. v. Superior Court , 139 Ariz. 31, 34, 676 P.2d 665, 668 (App. 1984). Although not defined in Sections 33-931 or 20-259.01, the A.R.S. Insurance Title (Title 20) defines "health insurance" in the context of a "[p]remium tax credit for health insurance certificates submitted by qualified persons," A.R.S. § 20-224.05(H)(3), to mean a "a licensed health care plan or arrangement that pays for or furnishes medical or health care services and that is issued by a health care insurer." This statute directs that "[h]ealth insurance does not include limited benefit coverage," id. , defined as "an insurance policy that is designed, advertised and marketed to supplement major medical insurance and that includes accident only" and other types of coverage, A.R.S. § 20-1137(B). This definition would exclude from health insurance the medpay coverage at issue here. And although this definition is limited to the premium tax credit context, Farmers has not shown that the Legislature defined "health insurance" to mean two irreconcilably different things depending upon whether the phrase was used in Section 33-931 or Section 20-224.05. Cf. Wyatt v. Wehmueller , 167 Ariz. 281, 284, 806 P.2d 870, 873 (1991) ("A court also should interpret two sections of the same statute consistently, especially when they use identical language.").
¶16 The existence of another statute specifically addressing medpay - with reference to an insurer's lien - also undercuts the thought that health insurance and medpay coverage are the same thing. A qualified insurer providing medpay coverage benefits ("medical payments coverage of a motor vehicle *748 insurance policy") may obtain an insurer's lien for any medpay coverage payment exceeding $ 5,000 "that is paid to or on behalf of that insured." A.R.S. § 20-259.01(J). Farmers did not obtain such a lien and this statute is not applicable to Dignity's lien. This insurer's lien statute, however, is evidence that the Legislature treats health insurance and medpay coverage as two different things. A similar distinction comes from the one other reference to "[m]edical payments coverage" in Title 20 as being one of seven types of "basic coverage" within motor vehicle insurance policies subject to renewal limitations. See A.R.S. § 20-1631(K)(5).
¶17 Apart from these statutory differences, in a different context, this court has recognized the difference between health insurance and medpay coverage. In Haisch v. Allstate Insurance Co. , the plaintiff had health insurance coverage for all "charges resulting from health care services listed in her plan" and had an "automobile liability policy that included optional MedPay coverage." 197 Ariz. 606, 607 ¶ 2, 5 P.3d 940, 941 (App. 2000). After the plaintiff was treated for injuries sustained in a car accident, her automobile insurer refused to pay medpay benefits for any treatment covered by health insurance. Id. at 608 ¶ 3, 5 P.3d at 942. The plaintiff sued her automobile insurer, arguing it "engage[d] in a systematic practice of unfairly marketing MedPay coverage, because it fails to disclose to its customers that MedPay will not cover any medical expenses already covered by the insured's ... health insurance." Id. at 609 ¶ 8, 5 P.3d at 943. Although rejecting the plaintiff's claims, id. at 612 ¶ 27, Haisch repeatedly acknowledged the difference between health insurance and medpay coverage and that the two phrases are not synonymous.
¶18 Had the Legislature wanted to exempt medpay coverage from the reach of a Section 33-931 health care provider lien, it could have done so. It has not, and that has meaning. Padilla v. Indus. Comm'n , 113 Ariz. 104, 106, 546 P.2d 1135, 1137 (1976) ("[W]hat the Legislature means, it will say."). The exclusion of health insurance from Section 33-931 does not also exclude medpay coverage. For these reasons, Farmers has not shown that its medpay coverage payment was included in the health insurance exception to Dignity's health care provider lien under Section 33-931. Accordingly, it was error to dismiss Dignity's complaint.[3]
¶19 Dignity requests an award of attorneys' fees incurred both on appeal and in the superior court pursuant to A.R.S. § 33-934. In the exercise of the court's discretion, Dignity is awarded an amount of reasonable attorneys' fees incurred on appeal, as well as its taxable costs on appeal, contingent upon its compliance with Ariz. R. Civ. App. P. 21. This court leaves to the superior court's discretion on remand any award of attorneys' fees resulting from proceedings before that court.
CONCLUSION
¶20 The dismissal of Dignity's complaint is vacated, and this matter is remanded for further proceedings consistent with this opinion.

In reviewing the grant of a motion to dismiss, this court assumes the truth of all well-pleaded facts alleged in the complaint. Fid. Sec. Life Ins. Co. v. State , 191 Ariz. 222, 224 ¶ 4, 954 P.2d 580, 582 (1998).

Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

Given this conclusion, the court need not address Dignity's arguments based on the classifications in Arizona's insurance code.